RALPH L. BROWN, Plaintiff and Respondent, v. MID-
LAND NATIONAL BANK, a Corporation, Executor of the
ESTATE OF JOHN BROWN, also known as JOHN
BROWN, JR., Deceased, Defendant and Appellant.

No. 11123.
Submitted November 28, 1967. Decided December 29, 1967.
As amended January 18, 1968.
435 P.2d 878.

Longan & Holmstrom, Robert W. Holmstrom (argued), Billings, for defendant and appellant.

Cooke, Moulton, Bellingham, Longo & Mather, William S. Mather (argued), Billings, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by the executor of an estate from a judgment based upon a rejected creditor's claim. The suit was tried to a jury in the district court of Musselshell County and resulted in a jury verdict in favor of the alleged creditor in the sum of $8,963 and interest. Judgment was entered on the jury verdict and this appeal follows from that judgment.

The facts giving rise to this controversy are these: During the years 1947 through at least part of 1951, plaintiff Ralph L. Brown (who will hereafter be referred to as plaintiff or the son) and his father, John Brown (who will hereafter be referred to as decedent or the father) were engaged in a joint farming and ranching operation on the father's farm about 13 miles northeast of Broadview and located mainly in Musselshell County. Under this arrangement it may generally be said that the father was to furnish all capital materials, and

expenses and the son was to furnish his labor, except that each was to furnish one-half of the pig breeding stock. This arrangement also involved a division of the proceeds of the joint operation between father and son. This joint farming and ranching operation between the father and son terminated during the year 1951.

Thereafter the father operated the family farm until 1955 at which time he leased it to his daughter and her husband who eventually purchased the farm in 1962. The father died on April 7, 1964, and on May 8, 1964, his will was admitted to probate with the Midland National Bank, the defendant herein, appointed as executor. The Bank will hereafter be referred to as the executor or as the defendant.

On August 18, 1964, the son, plaintiff herein, presented his creditor's claim against the estate to the executor on a standard creditor's claim form as follows (omitting the title of the court and cause, the standard preface, and the verification):

"The following items of work, labor, materials supplies and equipment furnished decedent by undersigned creditor, at special instance and request of decedent, for which decedent repeatedly promised and agreed to settle for and pay creditor, the most recent agreement being on March, 1962, as follows:

| 1947 | Hog House, 26′ x 50′ | $ 1,500.00 |
| 1949-50 | Shop, 32′ x 24′ | 1,000.00 |
| 1947-48 | 30 Gallon Red Paint | 100.00 |
| 1947 | Hardware for two gates | 35.00 |
| 1946-47 | Corral hardware, labor and material | 500.00 |
| 1947-48 | Post, lumber and fencing | 200.00 |
| 1949-51 | Miscellaneous tools, equipment, shop supply | 100.00 |
| 1945 | Water cooled pump and table saw | 150.00 |
| 1951 | Coal and wood range | 25.00 |
| 1949 | Electric stove | 250.00 |
| 1949 | Kitchen table and chairs | 160.00 |
| 1950 | ½ interest, Iron Age Sprayer | 475.00 |
| 1951 | Plow 300 acres, at $3.00 per acre | 900.00 |

| | | |
|---|---|---|
| 1949 | Labor and wages due | 1,500.00 |
| 1950 | Labor and wages due | 1,500.00 |
| 1954 | Purchase seed wheat, 200 bushels | 400.00 |
| 1946 | Hog wire fence, 25 acres | 200.00 |
| 1947 | ½ cost, 2 brood sows | 450.00 |
| 1951 | Cattle shed, 36' x 14' | 750.00 |

|  | |
|---|---|
| TOTAL | $10,195.00 |
| Less amount owed by creditor to estate, based on 1951 loan | $ 1,100.00 |
| BALANCE DUE CREDITOR | $ 9,095.00 |

Plus interest at 6% per annum from 1951."

On October 9, 1964, the executor rejected this creditor's claim, and on December 30, 1964, the son filed suit thereon.

The complaint alleges the joint venture between father and son in the farming and ranching operations; that plaintiff furnished certain work, labor, material, supplies and equipment thereunder in excess of his required contribution under the terms of the joint venture which the father agreed to pay; that upon termination of the joint venture in 1951 and thereafter, plaintiff repeatedly demanded an accounting and payment from the father for the alleged excess contributions of plaintiff to said joint venture; that the father repeatedly promised and agreed to account for and pay the same and further represented to plaintiff that if settlement was not made, plaintiff would be fully compensated by a bequest in the father's will; that in consideration of such promises and representations by the father, plaintiff withheld asserting any legal action or claim against his father during the latter's lifetime; that upon the father's death, his will did not provide for any bequest or settlement of plaintiff's claim; and by reason thereof, the decedent is indebted to plaintiff in the reasonable value of plaintiff's excess contribution to the joint venture farming and ranching operation as set forth in the creditor's claim. The

complaint then went on and alleged presentation and rejection of the creditor's claim which was incorporated by reference in the complaint.

The defendant's answer set up three defenses: (1) insufficiency of the complaint to state a claim; (2) admission of the joint venture farming operation, the death of the decedent, the admission of decedent's will to probate, the appointment and qualification of defendant as executor of decedent's estate, the reasonable value of the items allegedly furnished by plaintiff, the presentation and rejection of the creditor's claim in question, and generally denied everything else contained in plaintiff's complaint; and (3) that plaintiff's claim was barred by the five year statute of limitations covering oral contracts.

The contentions of the parties were further supplemented in the pre-trial order supplementing the pleadings in which the claims and contentions of the respective parties are set forth in this fashion:

Plaintiff's contentions are as follows: "Through the years 1941 through 1951 plaintiff and decedent were engaged in a joint venture on the decedent's ranch in Musselshell County involving the raising of pigs, milking of cows, and work, labor and material furnished by the plaintiff to the decedent. That under the terms of said joint venture, deceased was to furnish all capital material and expenses except one-half of the pig breeding stock and the plaintiff was to furnish his labor and one-half of the pig breeding stock. At all times during the term of this joint venture and until 1962 it was understood and agreed between the plaintiff and his decedent father that plaintiff was to receive his father's ranch on his father's retirement or death, and that capital improvements made by the plaintiff on his father's ranch would enure to the plaintiff's eventual benefit as he would eventually own the ranch. That relying on this understanding plaintiff performed and made various capital improvements and incurred expenses as itemized and set forth in his creditor's claim fully believing that the said capital

improvements and other items furnished would eventually enure to his benefit upon his receiving the ranch. That said joint venture terminated in 1951, but decedent repeatedly promised the plaintiff that the ranch would still be his on his father's death or retirement and that the matter was repeatedly discussed and that his father said that if settlement was not made that it was a matter of no consequence as the plaintiff would receive the ranch. That in March, 1962, decedent sold said ranch and that upon hearing of said sale plaintiff immediately met with the decedent and decedent's wife and pointed out that in view of the sale it was now impossible for him to receive the ranch as had been agreed and that he wanted settlement made on the items and things now claimed in the creditor's claim, all of which were either sold with said ranch or had previously been used on it and benefited the same for decedent's own interest. That at said meeting decedent told plaintiff not to worry, that if they did not get them adjusted that the plaintiff would be taken care of in decedent's will by receiving a large chunk of cash to cover these items, that plaintiff relied upon and believed said representations until death of decedent on April 7, 1964, when decedent's will disclosed that plaintiff received nothing under the terms thereof, and that plaintiff immediately filed his creditor's claim herein, which was rejected by the executor of said estate resulting in the present law suit. That plaintiff contends that there was an oral contract to devise or bequeath an amount equal to the value of capital improvements furnished, the amount set forth in the creditor's claim, that decedent breached said contract and that plaintiff is entitled to recover in quantum meruit for the reasonable value thereof, that the statute of limitations does not commence to run in this case until plaintiff discovered that decedent's will did not provide or bequeath as promised, particularly where plaintiff had relied upon the oral agreement of decedent to make payments for the same under the terms of his will."

Defendant's contentions are as follows: "Defendant's contentions are that the decedent was not indebted to the plaintiff in any sum, that he did not make any oral contract to bequeath a sum of money to the plaintiff and or if in fact such a contract was made, that it is unenforceable because it is not supported by adequate consideration and or it is barred by the statute of limitations. Defendant further contends that the plaintiff in any event is precluded from prosecuting the action upon the oral contract to bequeath because of a fatal variance between this action and the creditor's claim filed by the plaintiff and rejected by the executor."

Defendant's motion for a summary judgment made at the pre-trial conference was subsequently denied by the court. Trial was had before a jury resulting in a verdict for plaintiff, a judgment was entered thereon, and this appeal followed from that judgment.

The issues presented for review are: (1) Denial of defendant's motion for summary judgment; (2) Admission in evidence of testimony by plaintiff concerning transactions between himself and deceased relating to the claim sued upon; (3) Denial of defendant's motion for mistrial on the grounds of misconduct of counsel and some of the jurors; and (4) Denial of admission in evidence of five exhibits offered by defendant consisting generally of writing of the deceased concerning the alleged claim of his son and his son's indebtedness to him and his wife.

In our view the first issue presented for review above is decisive of this appeal. Therefore it is unnecessary to discuss in this opinion the other issues presented for review.

■■ The first issue presented for review, phrased by defendant in terms of a specification of error, is that the trial judge committed error in failing to grant defendant's motion for summary judgment based upon a variance between the creditor's claim presented to and rejected by the executor and the cause of action set forth in defendant's complaint. At the

outset it should be observed that although a motion for summary judgment is a non-appealable order at the time it is made because of its interlocutory character (Rule 1, M.R.App.Civ.P.; Barron & Holtzoff, Federal Practice and Procedure, Vol 3, § 1242; Moore's Federal Practice, Vol. 6, § 56.21(2); Jones v. St. Paul Fire & Marine and Insurance Co., 5 Cir., 108 F.2d 123; John Hancock Mutual Life Ins. Co. v. Kraft, 2 Cir., 200 F.2d 952; Dutton v. Cities Service Defense Corp., 8 Cir., 197 F.2d 458; McGrath v. Hunt, 2 Cir., 194 F.2d 529; Atlantic Co. v. Citizen's Ice and Cold Storage Co., 4 Cir., 178 F.2d 453; Marcus Breier Sons, Inc. v. Marvlo Fabrics, Inc., 2 Cir., 173 F.2d 29), all non-appealable intermediate orders or decisions properly excepted or objected to which involve the merits or necessarily affect the judgment are reviewable on appeal from a final judgment. (Rule 2, M.R.App.Civ.P., Rule 46, M.R.Civ.P.; section 93-8022, R.C.M.1947.) This review includes reviewing an order denying a motion for summary judgment.

It is to be noted that plaintiff himself concedes that there is some variance here between the creditor's claim and the claim sued upon in the instant case. The only disagreement is whether such variance is material and fatal on the one hand, or minor and immaterial on the other.

Plaintiff argues that the broad theory on which both the creditor's claim and the suit are based is the same, that the suit merely particularizes and details the broad basis of the creditor's claim, and that the suit is within the scope of the creditor's claim. Defendant, on the other hand, argues that the theory of recovery set forth in the creditor's claim is substantially different from the theory of recovery in the instant suit.

All claims against an estate arising upon contracts must be presented to the executor within four months of the first publication of notice to creditors. Section 91-2704, R.C.M.1947; Section 91-2701, R.C.M.1947. If the executor rejects the claim, the claimant must bring suit in the proper court against the executor within three months after the filing date of the re-

jected claim. Section 91-2709, R.C.M.1947. No holder of any claim against an estate can maintain any action thereon unless the claim is first presented to the executor. Section 91-2711, R.C.M.1947. The claim sued upon must be within the scope of the claim presented to the executor. The correct rule is set forth in Bancroft's Probate Practice 2nd Ed. § 901, pp. 751-752.

"It is settled by a long line of decisions that where, by statute, the holder of a claim against an estate is not permitted to maintain an action thereon unless he has first presented the claim for allowance, in an action after presentation and rejection of his claim he can recover only within the scope of such claim. * * * As the Montana court tersely remarks regarding the claim upon which an action may be maintained: 'What claim? It goes without saying that it is the identical claim which was presented; otherwise the law would be a dead letter.' "

The Montana decision quoted by Bancroft above is Brown v. Daly, 33 Mont. 523, 84 P. 883. To like effect see also Vanderpool v. Vanderpool, 48 Mont. 448, 138 P. 772; Harwood v. Scott, 57 Mont. 83, 186 P. 693; Brion v. Brown, 135 Mont. 356, 357, 340 P.2d 539.

From the above authorities it is apparent that the test of whether a variance between a creditor's claim and a subsequent suit is material and fatal is whether or not the claim sued upon is within the scope of the claim presented to the executor. Looking at the facts of the instant case we find that the variance consists of a creditor's claim grounded in debt, and a suit based upon breach of an oral contract to be an action for breach of contract to bequeath is a material departure from a creditor's claim to recover a debt. In a similar but not identical case, this court has held that there is a fatal variance between a creditor's claim for monthly wages for services rendered and a subsequent suit based upon breach of a contract to devise land. Brion v. Brown, supra. Only in the broad sense that both seek recovery of the same

amount of money can the instant suit be said to be within the scope of the creditor's claim. We deem this insufficient as the basic theory of recovery in the creditor's claim is entirely different from that in the suit.

Accordingly, we hold that there is a material and fatal variance between the claim of plaintiff contained in his creditor's claim and the claim of plaintiff contained in his contentions in the pre-trial order and by reason thereof, defendant's motion for summary judgment should have been granted.

The judgment of the district court is reversed and the cause remanded to the district court with instructions to enter a dismissal.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON concur.