No.  95-421

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

DENNIS RUANA, ROBERT W. BIELBY,
CARLA J. BIELBY, PAM McCOY and
KARL HEINZ-FINKEN,

        Plaintiffs and Respondents,

   v

LEONARD GRIGONIS and
KATHY J. GRIGONIS,

        Defendants and Appellants.

APPEAL FROM: District Court of the Twenty-First Judicial District,
          In and for the County of Ravalli,
          The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

           Don Torgenrud, Attorney at Law, St. Ignatius,
           Montana

        For Respondents:

           Zane K. Sullivan; Sullivan & Tabaracci, Missoula,
           Montana

Submitted on Briefs: February 1, 1996

Decided:  March 28, 1996

Filed:  MAR 28 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The Grigonises appeal from the Ravalli County, Twenty-first Judicial District Court's Order and Judgment granting Dennis Ruana, Robert W. Bielby, Carla J. Bielby, Pam McCoy and Karl Heinz-Finken, Respondents, summary judgment. The Respondents, Bielby and Ruana, are the developers of "Paradise Acres," Pam McCoy and Karl Heinz-Finken are purchasers of one of the "Paradise Acres" lots which abuts the Grigonis property. Together, the Respondents moved for summary judgment arguing that they have a reserved sixty-foot easement crossing the Grigonises' property as a matter of law. They base their argument on two recent decisions by this Court, Halverson v. Turner (1994), 268 Mont. 168, 885 P.2d 1285, and Bache v. Owens (1994), 267 Mont. 279, 883 P.2d 817. The District Court granted the Respondents' motion. We reverse.

The following issues are presented by the Grigonises:

1.  Did the District Court err in holding, as a matter of law, that Respondents have an easement by reservation across a sixty-foot wide private road and public utility easement on the Grigonises' property, where the certificate of survey for Respondents' property does not include or depict the easement nor is it recorded on any other pertinent documents?

2.  Are the Grigonises entitled to summary judgment on the issue of easement by prescription?

3.  Are the Grigonises entitled to summary judgment on the issue of easement by implication?

4.  Are the Grigonises entitled to judgment on the issue of laches?

5.  Are the Grigonises entitled to summary judgment on the issue of trespass, based on the Respondents' construction of Blue Sky Lane and the raising of the surface of North Hidden Valley Road?

2

6.   Are the Grigonises entitled to attorney's fees expended in defense of their land?

The property at issue is located in Ravalli County, Montana, and is situated north and south of the section line between Sections 8 and 17 of Township 10 North, Range 19 West, M.P.M. The Respondents allege that they have rights to two easements. The first is a sixty-foot private road and public utility easement running east-west just south of the 8-17 section line. North Hidden Valley Road runs roughly through the center of this easement continuing east to a dead end, and continuing west until it joins the East Side Bitterroot Highway. The second potential easement, Blue Sky Lane, comes off North Hidden Valley Road. Respondents built Blue Sky Lane to access their 56-lot "Paradise Acres" subdivision to the north of North Hidden Valley Road. Blue Sky Lane originates on the Grigonises' property.

The properties owned by the Grigonises and the Respondents were originally contained in a much larger parcel of property, the Cook Ranch. In 1976, the Cooks sold a portion of the ranch to Wilbur and Ila Hensler. The Henslers' property encompassed the parcels now owned by the Grigonises and the Respondents. In 1977, the Henslers sold a portion of their property to John Reely, William Reely, and Delbert Ashmore (Reely-Ashmore). The Henslers to Reely-Ashmore sale included property south of the 8-17 section line including within it the property now owned by the Grigonises. The Henslers retained the property to the north of the 8-17 section line that is now owned by the Respondents. Thus, it was this 1977

3

sale that split the properties now at issue from single ownership. In 1988, the Grigonises purchased 10.76 acres south of the 8-17 section line from Reely-Ashmore's successors in interest. In 1990, the Henslers sold Respondents approximately 133 acres north of the 8-17 section line, including the land just to the north of the Grigonises. The northern border of the Grigonis property abuts the property of the Respondents.

When the Grigonises purchased their property, there was a grassy strip extending southward approximately fifteen feet from the northern border of their property. The grassy strip contains public utility lines. North Hidden Valley Road abuts the grassy strip to the south and runs roughly down the center of the sixty-foot wide public utility, private road easement. North Hidden Valley Road is a dirt road, approximately twenty to twenty-five feet wide that runs east-west. Both the grassy strip and North Hidden Valley Road fall within the "private road and public utility easement" that extends south sixty feet from the 8-17 section line into the Grigonises' property (see diagram).



NOT TO SCALE, MEASUREMENTS ARE APPROXIMATE

RESPONDENTS' PROPERTY

GRIGONISES' PROPERTY

The Grigonises acknowledge that when they bought their property it was plainly subject to the North Hidden Valley Road east-west easement. This easement allowed homeowners to the east to access their properties. However, they argue that this easement does not extend north, that is, no easement to the north off of North Hidden Valley Road such as Blue Sky Lane was ever reserved or created.

A fence separates the Respondents' and Grigonises' properties. In 1991, without the Grigonises' permission, Bielby, one of the Respondents, took down the fence and constructed a dirt road, Blue Sky Lane. Blue Sky Lane originates from North Hidden Valley Road in the Grigonises' property and heads north through the grassy strip into Respondents' property. Blue Sky Lane provides access onto North Hidden Valley Road for the 56-lot "Paradise Acres" subdivision.

The Grigonises were unhappy with the construction of Blue Sky Lane on their property and offered to sell Respondents easement rights. Respondents did not reply to the Grigonises' offer and there were no further negotiations. Leonard Grigonis re-erected the fence and posted signs stating that use of Blue Sky Lane was unpermitted trespass. Bielby removed the signs and a portion of the fence and Respondents continued to use Blue Sky Lane as their access to North Hidden Valley Road.

Respondents sought and obtained an injunction to prevent the Grigonises from interfering with Respondents' use of Blue Sky Lane. Respondents asserted easement rights based on a number of theories:

5

easement by reservation, easement by grant, public road by prescription, and easement by necessity, all with the accompanying right to build an access road, i.e., Blue Sky Lane. The Grigonises asserted that Respondents have no easement rights in North Hidden Valley Road, have no right to build an access road to intersect North Hidden Valley Road, and that in building Blue Sky Lane, Respondents wrongfully occupied, trespassed, converted, and physically damaged the Grigonises' property. The Grigonises sought Rule 11, M.R.Civ.P., sanctions against Respondents in the form of attorney's fees and costs, as well as damages under the tort theories of wrongful occupation, trespass, conversion and property damage. The parties filed numerous motions and cross-motions for summary judgment on the following grounds: public prescriptive easement, tortious interference with easement rights, easement by estoppel, trespass, wrongful occupation, easement by grant, easement by reservation, easement by necessity, laches and Rule 11, M.R.Civ.P., sanctions.

Initially, the court denied summary judgment to either party for easement by grant and/or reservation and for public road by prescription; denied both parties summary judgment for laches, tortious interference, trespass and/or wrongful occupation; granted summary judgment in favor of the Grigonises on Respondents' claim of easement by estoppel; dismissed Respondents' claim of easement by necessity and substituted a claim of easement by implication in its place; granted summary judgment to Respondents as to whether any rights to use North Hidden Valley Road automatically included

6

rights to use and build within the entire sixty-foot easement area thereby limiting argument at trial to whether Respondents have rights in the sixty-foot easement containing North Hidden Valley Road, and; granted summary judgment to Respondents for the Grigonises' claims of Rule 11, M.R.Civ.P., violations and abuse of process. The Grigonises sought and were denied a Motion for Reconsideration.

Respondents subsequently filed another motion for summary judgment based on this Court's recent decisions in Halverson v. Turner (1994), 268 Mont. 168, 885 P.2d 1285, and Bache v. Owens (1994), 267 Mont. 279, 883 P.2d 817. After reconsideration, and relying on <u>Halverson</u> and <u>Bache</u>, the District Court granted Respondents' Motion for Summary Judgment on their claim of easement by grant or reservation. The court ruled that Respondents have:

> as a matter of public record, a sixty (60') foot road/ utility easement by reservation which crosses Defendants' [Grigonises'] property and lies adjacent to Plaintiffs' [Respondents'] property as described in Certificate of Survey 1733. Such easement right includes the accompanying right to build access roads or drive ways, such as Blue Sky Lane, in order to exercise their easement right to use North Hidden Valley Road which lies within the north and south boundaries of their sixty foot easement and any other use consistent with the road and utility purposes of the easement.

The Grigonises appeal the District Court's grant of summary judgment as well as its prior rulings denying their cross-motions for summary judgment.

1. Did the District Court err in holding, as a matter of law, that Respondents have an easement by reservation across a sixty-foot wide private road and public utility easement on the Grigonises' property, where the certificate of survey for Respondents' property does not include or depict the easement nor is it recorded on any other pertinent documents?

Our standard of reviewing a grant of summary judgment is the same as that used by the district court. Halverson, 885 P.2d at 1288; Wild River v. Board of Trustees (1991), 248 Mont. 397, 399-400, 812 P.2d 344, 345. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Bache, 883 P.2d at 820. Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Motarie v. Northern Mont. Joint Refuse Disposal Dist. (Mont. 1995), 907 P.2d 154, 156, 52 St.Rep. 1209, 1210.

An easement is a non-possessory interest in land, a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon land. Kuhlman v. Rivera (1985), 216 Mont. 353, 358, 701 P.2d 982, 985 (citations omitted). "An easement is an interest in land that cannot be created, granted or transferred except by operation of law, by an instrument in writing, or by prescription." Wild River, 812 P.2d at 846 (quoting Prentice v. McKay (1909), 38 Mont. 114, 118, 98 P. 1081, 1083). An easement by reservation must arise from the written documents of conveyance. Halverson, 885 P.2d at 1288. In determining the existence of an easement by reservation in documents of conveyance, it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity. Halverson, 885 P.2d at 1288.

8

Concerning North Hidden Valley Road, the District **Court noted** that:

> the public record clearly evidenced the long term existence of the 60' private road/public utility easement dating at least as far back as the 1970s, and that the public record, as well as testimony before the Court, evidenced the existence of the road which lies within the boundaries of the easement dating as far back as the early 1900s. However, there did not appear to be any instruments of conveyance containing specific language "creating" the easement of record and/or the road.

Because an easement by reservation must arise from the written documents of conveyance, we examine the chains of title in question. <u>Halverson,</u> 885 P.2d at 1288. Examination of the chain of title to the Grigonises' property reveals when the North Hidden Valley Road easement was created for the properties at issue. Property must be divided between or among separate owners for an easement to be created because it is fundamental that one property owner cannot have an easement across his or her own land. <u>Wild River,</u> 812 P.2d at 347. The first time the properties that are now the Grigonises' and the Respondents' were divided from a singly owned property was in 1977, when the Henslers sold part of their property to Reely-Ashmore. Thus, this transfer of title is decisive in establishing the granted or reserved easement rights as between the Respondents and the Grigonises. The Henslers retained the part of their property to the north of the 8-17 section line that they ultimately sold to Respondents in 1990. The 1977 deed from the Henslers to Reely-Ashmore, which included the 10.76 acres south of the 18-7 section line now owned by the Grigonises, stated:

> SUBJECT TO an access easement being sixty (60) feet wide and lying south of and adjacent to the following

continuous line; the north line of the NE1/4NW1/4 of Section 17; the north line of the NE1/4 of Section 17; and the north line of the NW1/4 of Section 16 [i.e., North Hidden Valley Road].

The deed also stated:

Section 17: All of the NE1/4 except that land as recorded on Certificate of Survey No. 1316; also all of the NW1/4 except that land as recorded on Certificate of Survey No. 1316.

Certificate of Survey (COS) number 1316 does not depict the sixty-foot private road (North Hidden Valley Road) and public utility easement just south of the 8-17 section line.

Reely-Ashmore assigned the parcel of land to Hidden Valley Ranches in 1977. The deed to Hidden Valley Ranches contained the same "subject to" language and reference to COS number 1316 stated above. In 1978, Hidden Valley Ranches sold twenty-one and one-half acres to John Reely. However, rather than the "subject to" language and reference to COS number 1316, the deed from Hidden Valley Ranches to John Reely recited the property description and stated "[a]ccording to survey data, monuments and easements as shown on Certificate of Survey No. 1503." Certificate of Survey number 1503 clearly depicts the sixty-foot private road and public utility easement just south of the 8-17 section line.

In 1978, John Reely, in anticipation of splitting his acreage further, had COS number 1733 prepared. Certificate of Survey number 1733 also clearly depicts the sixty-foot private road and public utility easement just south of the 8-17 section line. Neither COS number 1503 nor COS number 1733 depict any property north of the 8-17 section line, they only portray property south of

10

the section line.  The subsequent deeds that continued to split the
property into smaller parcels up and until the 1988 sale to the
Grigonises, included a reference to COS number 1733.

In Wild River, we held that, normally, the words "subject to"
do not create an easement.  Wild River, 812 P.2d at 346.

> The words "subject to" used in their ordinary sense, mean
> subordinate to, subservient to or limited by.  There is
> nothing in the use of the words "subject to," in their
> ordinary use, which would even hint at the creation of
> affirmative rights or connote a reservation or retention
> of property rights.

Wild River, 812 P.2d at 346-47 (citations omitted).  Thus the
"subject to" clause in the 1977 Hensler to Reely-Ashmore deed did
not create or reserve easement rights in North Hidden Valley Road.

On the other hand, we held in Bache and Halverson that an
easement by reservation can be established when, in conjunction
with a division of land, the subject **easement is** shown on the
certificate of survey and the certificate of survey is referred to
and incorporated in the deed of conveyance.  Halverson, 885 P.2d at
1289; Bache, 883 P.2d at 822.  Halverson concerned two tracts of
land, originally owned by one person, Dahlia Halverson.  Halverson
filed and recorded a COS subdividing her land with the office of
the clerk and recorder.  The COS concerning the tracts in question
showed an easement providing access to a street.  This Court held
that Dahlia Halverson created an easement by reservation when she
quitclaimed one of the tracts and made reference to the COS which
showed the easement in question.  We concluded that the reference
in the document of conveyance to a recorded COS which adequately

11

described the easement was sufficient to establish the easement. Halverson, 805 P.2d at 1289.

In the instant case, COS number 1316, filed in June 1977 in conjunction with the Hensler to Reely-Ashmore deed when the properties in question were split, does not depict the sixty-foot wide private road and public utility easement just south of the 8-17 section line. However, COS number 1503, filed in July of 1978 in conjunction with the Hidden Valley Ranches to John Reely deed, clearly shows the sixty-foot wide private road and public utility easement just south of the 8-17 section line. Certificate of Survey number 1503 identifies the easement clearly and specifically. Bache, 883 P.2d at 822. Certificate of Survey number 1733, prepared for John Reely in 1978, splitting his twenty-one and one-half acres into two 10.76 acre lots, also clearly depicts the sixty-foot wide, east-west easement.

Based on Wild River, Bache and Halverson, the North Hidden Valley Road easement was not granted or reserved as to the Grigonises' property until there was a reference in a document of conveyance to a recorded COS adequately describing the easement. Accordingly, the easement was not granted or reserved when the Henslers sold to Reely-Ashmore because neither the language of the deed nor COS number 1316 established the easement. Thus, the easement was not granted or reserved when what are now the Grigonises' and Respondents' properties were split from single ownership. The Griyonis property was not subjected to the easement until 1978 when Hidden Valley Ranches sold twenty-one and one-half

12

acres to John Reely. It was **granted by the 1978 deed which** described the property according to the data, monuments and easements shown on COS number 1503. Certificate of Survey number 1503 clearly depicts the east-west private road and public utility easement just south of the 8-17 section line. This easement by reservation could only apply to east-west travel on North Hidden Valley Road because the parcels of land being divided were to the east and west of each other, and because the land to the north of section line 8-17, i.e., the Respondents' property, had been split off earlier without reservation of an easement. Additionally, both COS number 1503 and COS number 1733 only depict property south of the 8-17 section line, neither portray nor refer to property north of the 8-17 section line. Consequently, under <u>Wild River, Bache</u> and <u>Halverson,</u> the conveying documents in the Grigonises' chain of title establish that their property cannot be servient to an easement by grant or reservation held by the Respondents to the north because Respondents' predecessors in interest, the Henslers, did not reserve or create any easement rights in North Hidden Valley Road when they sold that portion of their property south of the 8-17 section line. The Grigonises' property is only servient to the east-west easement created by the 1970 deed from Hidden Valley Ranches to John Reely.

The Respondents' chain of title supports this conclusion that the Henslers did not grant or reserve any easement rights to North Hidden Valley Road or Blue Sky Lane. In 1990, the Henslers sold Respondents 133 plus acres north of the 8-17 section line. The

**August 2, 1991, deed from the Henslers to the Respondents granting** the 133 plus acres did not contain any language referring to the claimed easements at issue. Subsequent to the filing of this lawsuit, on October 29, 1993, the Henslers executed an Amended Deed expressing their intent to replace and supersede the August 2, 1991 deed. The Amended Deed from the Henslers to Respondents included the following provision:

> 8. An easement for access over the 60 foot private road and public utility easement known as North Hidden Valley Road, to the extent of those rights reserved by the Grantors.

However, as explained above, the Henslers had not created or reserved easement rights to North Hidden Valley Road when they retained the property to the north of the 8-17 section line in their 1977 conveyance to Reely-Ashmore. The Hensler to Reely-Ashmore deed did not create or reserve an easement because the language "subject to" is insufficient to grant or reserve an easement. Wild River, 812 P.2d at 347. Additionally, COS number 1316 referred to in the Hensler to Reely-Ashmore deed did not delineate the easement. It was not until Hidden Valley Ranches sold the property to John Reely, with the deed's reference to COS number 1503 clearly describing the easement, that the easement was granted or reserved. Halverson, 885 P.2d at 1289. This grant or reservation was after the Hensler to Reely-Ashmore sale and thus could not inure to the Henslers' benefit. Consequently, the Henslers could not convey easement rights to Respondents because the Henslers did not have any easement rights to convey. Their amended deed could not remedy the failure to reserve an easement in

14

1977.  Therefore, we hold that the District court erred in determining that Respondents have, as a matter of public record, a sixty-foot road/utility easement by reservation as described in COS number 1733.

Appellate review of the remainins issues:

Having reversed the District Court's 1995 Final Order and Judgment, a question arises as to whether the court's earlier rulings on various motions for summary judgment are now also reviewable.  Once a final judgment has been entered, all nonappealable intermediate orders or decisions, to which there has been a proper objection, are reviewable on appeal from the final judgment. Kirchner v. Western Mont. Mental Health Ctr. (1993), 261 Mont. 227, 230, 861 P.2d 927, 929; Brown v. Midland Nat'l Bank (1968), 150 Mont. 422, 435 P.2d 878.  In Brown, we established that

> although a motion for summary judgment is a non-appealable order at the time it is made because of its interlocutory character  .  .  all non-appealable intermediate orders or decisions properly excepted or objected to which involve the merits or necessarily affect the judgment are reviewable on appeal from a final judgment. . . .  This review includes reviewing an order denying a motion for summary judgment.

Brown, 435 P.2d at 881-82 (citations omitted).

In its order of May 1994, the District Court granted summary judgment with regard to the following issues:

1.    easement by estoppel
2.    Rule 11, M.R.Civ.P., violations and abuse of process.

15

Since these issues have not been appealed, we need not discuss them. The court denied summary judgment as to the following issues:

1.   easement by public prescription
2.   laches
3.   tortious interference
4.   trespass and/or wrongful occupation.

The court dismissed Respondents' claim of easement by necessity and, sua sponte, substituted a claim of easement by implication in its place. The court also granted Respondents summary judgment as to whether any rights to use North Hidden Valley Road automatically included rights to build within the entire sixty-foot easement area. The Grigonises appeal from the court's denial of summary judgment in their favor as to the above issues.

Our standard of reviewing a grant, or in the present case, denial, of summary judgment is the same as that used by the district court. Halverson, 885 P.2d at 1288; Wild River, 812 P.2d at 345. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Bache, 883 P.2d at 820. Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Motarie, 907 P.2d at 156.


Easement by Prescription:

We agree with the District Court that material questions of fact remain as to whether Respondents have an easement by

16

prescription, including the issue of whether the construction of Blue Sky Lane exceeds the use allegedly made of North Hidden Valley Road during the period of prescription. We remand for trial on this issue.

Easement by Implication:

We note that the District Court made no ruling on the issue of easement by implication. Rather, in its May, 1994 Order and Opinion addressing Respondents' claim of easement by necessity, the District Court found sufficient evidence to support a claim of an implied easement over the Grigonises' property based on this Court's decision in Graham v. Mack (1985), 216 Mont. 165, 699 P.2d 590. The District Court stated "easement by implication, rather than easement by necessity, is the proper claim." The court ordered that Respondents' Amended Complaint be conformed to the evidence by substituting a claim of easement by implication in place of Respondents' claim of easement by necessity. See Rule 15(b), M.R.Civ.P. *Sua sponte,* the court found material questions of fact regarding the intent of the parties and whether an easement by implication had been created.

The Grigonises argue that Respondents cannot meet the high standard of establishing an easement by implication. They argue that Respondents cannot produce evidence to show manifest, obvious or permanent use of what is now Blue Sky Lane prior to 1977. Graham, 699 P.2d at 596. We agree with the Grigonises that this is the burden Respondents must meet, however, they must be granted the

17

opportunity to do so.  Because the District Court has not ruled on this theory, we remand for a trial on the issue of easement by implication including the issue of whether or not the evidence supports a finding that, in the 1977 separation of title, Reely-Ashmore (Grigonises' predecessors) bought the property with notice that the Henslers (Respondents' predecessors) had an easement that included north bound traffic on what is now Blue Sky Lane.

<u>Do riahts to use the sixtv-foot easement containins North Hidden Valley Road automatically include rishts to build an access road such as Blue Skv Lane?</u>

The District Court holding that any easement rights Respondents might have in the sixty-foot easement containing North Hidden Valley Road automatically include the right to build Blue Sky Lane is in error.  Based on our discussion of easement by prescription and easement by implication, it is apparent that any right Respondents may have to use North Hidden Valley Road does not automatically include a right to build Blue Sky Lane to the north. "No use may be made of the right of way, different from that established at the time of creation so as to burden the servient estate to a greater extent than was contemplated at the time of the grant."  Titeca v. State, Dep't of Fish & Game (1981), 194 Mont. 209, 214, 634 P.2d 1156, 1159; <u>see also</u> Sampson v. Grooms (1988), 230 Mont. 190, 195, 748 P.2d 960, 963. Similarly, for prescriptive easements, the use of a roadway cannot exceed the use made of it during the prescriptive period.  Warnack v. Coneen Family Trust

18

(1994), 266 Mont. 203, 218, 879 P.2d 715, 723. Further, the extent of an easement is governed by § 70-17-106, MCA, which states:

> The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired.

Consequently, assuming Respondents can establish an easement to use North Hidden Valley Road, they must then either: 1) establish that construction and use of Blue Sky Lane is encompassed within and does not exceed the scope of their easement, whether by implication or prescription, on North Hidden Valley Road, or; 2) establish that, in addition to their easement on North Hidden Valley Road, they have an easement by prescription or implication on Blue Sky Lane.

**The questions of laches, trespass, and attorney's fees:**

Concerning the issues of laches, trespass, and attorney's fees, the District Court, in its May 1994 Order and Opinion, stated:

> Until the issues are resolved as to whether Plaintiffs [Respondents] have any rights in the easement, ruling on issues regarding damages for interference with or trespass on property rights is premature.

We agree. The issues of laches, trespass, and the propriety of attorney's fees must await determination of the easement question.

Accordingly, we remand for trial on all remaining issues. Reversed and remanded for proceedings consistent with this opinion.

_____
                    Justice

19

We concur.

_J. A. Turnage_
Chief Justice

_____

_____

_William E. Hunter_

_Fred Tinewich_
Justices