No. 96-599

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

LARRY ROEDEL,

Plaintiff and Respondent,

v.

JOHN R. BENNETT, a/k/a John Rockwell Bennett, and
KAREN WOODCOCK, RUSSELL FEDERATION and
LYNN E. FEDERATION, DONALD J. BISSELL and
CYNTHIA F. BISSELL, and DOES I to IV,

Defendants and Appellants.

FILED

OCT 10 1997

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Kathleen O'Rourke-Mullins, Attorney at Law; Polson, Montana
(for Appellants Bennett and Woodcock)

For Respondent:

Richard DeJana, Attorney at Law; Kalispell, Montana

Submitted on Briefs: August 14, 1997

Decided: October 10, 1997

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

The plaintiff, Larry Roedel, filed a complaint in the District Court for the Twentieth Judicial District in Lake County to establish his exclusive right to use his own property and the right to use adjoining property. By counterclaim, the defendants asserted a right to a thirty-foot easement across Roedel's property. After a hearing, the District Court recognized a prescriptive easement over Roedel's property for the benefit of the defendants, John Bennett, Karen Woodcock, and Donald and Cynthia Bissell, and awarded Roedel a right of use over an adjoining parcel to which an ownership interest is claimed by Bennett. Both parties appeal the District Court's decision. We affirm in part and reverse in part the judgment of the District Court.

There are three issues on appeal:

1.      Did the District Court err when it recognized a prescriptive easement for a twelve-foot right-of-way across Roedel's property?

2.      Did the District Court err when it recognized Bennett as an owner of Parcel G?

3.     Did the District Court err when it awarded Roedel a right of use, construction, and maintenance over the entire Parcel G?

## FACTUAL BACKGROUND

This case involves two parcels of land. The first parcel is a 60-foot strip known as Parcel G. The second parcel is a 30-foot strip referred to herein as the 30-foot Right-of-Way.

In July 1972, the Clydesdales had Deed Exhibit H-1998 prepared. Exhibit H-1998 depicts all the property at issue in this case.[1] Exhibit H-1998 indicated that Parcel G was "[r]eserved for future road." It was filed on April 18, 1973.

---

[1]The following is an approximate illustration of the relevant property as depicted on Exhibit H-1998:



On July 31, 1972, the Clydesdales transferred Parcel E, as described on Exhibit H-1998, by warranty deed to the Palins (Karen and Walter). Later, the Clydesdales also made a specific grant of Parcel G by warranty deed to the Hubbards and the Palins. The deed, which was recorded on December 28, 1973, declared that the Hubbards and the Palins were "tenants in common" and that "they shall equally share all taxes and maintenance costs."

In 1975, the Hubbards transferred to the Richardsons "a use in common for the purpose of ingress and egress over that tract of land described as Tract G shown on Deed Exhibit H-1998 (209094)." Finally, in 1977, the Hubbards transferred to Vera Connolly "an undivided one-half interest in Tract G as shown on Plat No. 1998, Reception 209094, Records of Lake County." Thus, title in Parcel G prior to the transfers at issue in this case rested in Vera Connolly and the Palins as owners of undivided one-half interests, and in the Richardsons as owners of a right to use for ingress and egress.

On February 20, 1976, the Palins filed Certificate of Survey ("COS") 2482 to create Parcel A for occasional sale. Parcel A contains 0.723 acres, borders Parcel G on the north and east, and had previously been a part of Parcel E. Certificate of Survey 2482 also shows a 30-foot "R/W" that borders Parcel A and runs over both Parcel E and a northern part of Parcel G to access Highway 209 and the southern portion of Parcel G. That same day, the Palins also filed COS 2483 for the purpose of "parcel creation for easement purposed [sic]."

4

Certificate of Survey 2483 creates the 30-foot Right-of-Way parcel along the southern border between Parcel A and Parcel E; it contains 0.33 acres. Both COS 2482 and 2483 reference Exhibit H-1998 for its description of Parcel G and show the remainder of Parcel E retained by the Palins.

Also on February 20, 1976, the Palins recorded a deed to the Hubbards which transferred Parcel A and the 30-foot Right-of-Way. The deed referred to COSs 2482 and 2483 and defined the properties according to the Certificates "attached and made a part hereof." A week later, the Hubbards recorded a deed which transferred Parcel A and the 30-foot Right-of-Way to Robert and Arline Richardson. The deed was identical to the deed from the Palins to the Hubbards, except for the different parties and language inserted before the land descriptions granting "a use in common with others for roadway purposes." The Hubbards had signed the deed on January 26, 1976.

Arline Richardson, who was then the sole owner of the property, transferred Parcel A and the 30-foot Right-of-Way to Larry Roedel on June 3, 1991. In the warranty deed, the description of Parcel A includes "[a]s shown on Certificate of Survey No. 2482" and the description of the 30-foot Right-of-Way includes "[a]s shown on Certificate of Survey No. 2483." In addition, the deed is qualified by making it "[s]ubject to all reservations, restrictions, covenants, conditions, rights-of-way and easements apparent or of record."

Roedel is the respondent on appeal, and the current owner of Parcel A and the 30-foot

Right-of-Way.

On November 17, 1980, the Palins filed COS 3321 to create Parcel 1 for occasional

sale and Parcel 2 as a remainder; Parcels 1 and 2 constitute all of the former Parcel E.[2]

---

[2]The following is an approximate illustration of the relevant property as depicted
on Certificate of Survey 3321:



Parcel 1 is a one-acre parcel whose eastern edge borders the southern portion of Parcel G and which is otherwise surrounded by the 12.596 acre Parcel 2. The parcel referred to as the 30-foot Right-of-Way is labeled on COS 3321 as a "30.00' roadway per C. of S. No. 2483," while the northern border of Parcel 2, which abuts the 30-foot Right-of-Way, is labeled "Southerly R/W Line of that parcel shown on C. of S. No. 2483." The description of Parcel 1 on COS 3321 states "TOGETHER WITH a 60.00 foot easement as shown hereon and shown as Parcel G per H-1998 and described in Microfilm No. 214584, records of Lake County, Montana," while the description of Parcel 2 on COS 3321 states "TOGETHER WITH a 60.00 foot road easement as shown hereon and shown as Parcel G per H-1998 and described in Microfilm No. 214584, records of Lake County, Montana." (Emphasis added.) The descriptions of both Parcel 1 and 2 on COS 3321 state "TOGETHER WITH a 30.00 foot road easement as shown hereon and on Certificate of Survey No. 2483 and also described in Microfilm No. 225994, records of Lake County, Montana." Parcels 1 and 2 are the property currently owned by the appellants in this case, and each parcel borders Parcel G; only Parcel 2 borders the 30-foot Right-of-Way.

On November 19, 1980, the Palins transferred Parcel 1 to Glenna Palin, "TOGETHER with a right to use a 60.00 foot easement shown as Parcel G per H-1998 and described in Microfilm No. 214584 records of Lake County, Montana." On February 27, 1981, the Palins also transferred Parcel 2 to Glenna Palin, "TOGETHER WITH a 60.00 foot road easement

7

shown as Parcel G per H-1998 and also described in Microfilm No. 214584, records of Lake County, Montana."

On July 21, 1983, Glenna Palin transferred her interest in Parcel 1 to the Runnels, "TOGETHER with a right to use a 60.00 foot easement shown as Parcel G per H-1998 and described in Microfile No. 214585 records of Lake County, Montana." On August 12, 1986, the Runnels transferred their interest in Parcel 1 to the Bissells, "TOGETHER with a right to use a 60.00 foot easement shown as Parcel G per H-1998 and described in Microfile No. 214585 records of Lake County, Montana." On August 20, 1987, Glenna Palin transferred her interest in Parcel 2 to John Bennett, "TOGETHER WITH a 60.00 foot road easement (1/2 undivided interest) shown as Parcel G per H-1998 and also described in Microfilm No. 214584, records of Lake County, Montana." The Bissells and John Bennett, along with Karen Woodcock, are the current owners of Parcels 1 and 2, respectively, and are the appellants in this case. Bennett has represented Woodcock's interests throughout this case.

On August 7, 1989, the Palins, clearly believing that they had transferred all of their use and ownership rights in Parcel G to Glenna Palin, executed with John Bennett, as Glenna Palin's successor in interest, an Addendum to Warranty Deed: Reservation of Right of Way. The Addendum states:

> WHEREAS, [Palins], as Seller, executed a Contract for Deed with Glenna R. Palin, as Purchaser, on March 5, 1981;
> WHEREAS, such Contract for Deed provided as follows: "Purchaser agrees to convey to Seller the right to use the 60.00 foot easement shown on

8

Parcel G per H-1998 and described in Microfilm N.214584, records of Lake County, Montana";

WHEREAS, John R. Bennett, assignee of the contract interest of Glenna R. Palin, is presently satisfying in full all amounts due to Seller under the terms of such contract;

WHEREAS, in consideration thereof, John R. Bennett has received a warranty deed from the escrow agent;

WHEREAS, easement rights upon Parcel G have been conveyed to purchaser by the warranty deed given to him;

WHEREAS, however, such warranty deed does not contain a paragraph regarding reservation by Seller of a right-of-way over Parcel G;

NOW THEREFORE, in consideration of the above, John R. Bennett, as assignee of the contract purchaser, hereby agrees to the following addendum to said warranty deed:

"The grantors, [Palins], expressly reserve unto themselves, their heirs, executors, administrators, personal representatives and assigns, the right, at their own risk, to cross the strip or parcel of real property known as Parcel G, and more particularly described as follows: . . . for the purpose of having access to such other part or portion of real property belonging to grantors as may be serviced by such Parcel G easement.

At the time they executed the Addendum, the Palins owned only a small strip of Swan River access land adjacent to the east/west portion of Parcel G.

Finally, on August 25, 1993, Roedel executed an agreement with the Palins. Their Consent to Build a Roadway and Indemnity states:

[Palins] hereby authorize Larry Roedel to construct a roadway that certain Parcel G more particularly described on the Exhibit A.

By giving this consent [Palins] expressly warrant that they have the rights as more particularly stated on Exhibit A.

Larry Roedel agrees to hold Palins harmless from any and all damages and recognizes that, John R. Bennett also John Rockwell Bennett and Karen E. Woodcock are the owners in fee and further recognizes that the consent by Palin is not a warranty that they can give full consent and assumes at his own risk any actions taken without the consent of Bennett and Woodcock.

9

The Exhibit A to which they refer is the Addendum to the Warranty Deed, which describes the Palins' reservation over Parcel G. Roedel constructed a roadway over Parcel G in the fall of 1995, and has since maintained and plowed the roadway.

For as long as the parties here have owned their respective properties, they have used the 30-foot Right-of-Way as a roadway. Roedel was aware of their use when he acquired Parcel A and the 30-foot Right-of-Way. At no time was the roadway more than twelve feet wide. Roedel has placed corrals, fencing, and other objects within the 30-foot Right-of-Way, but they do not obstruct the twelve-foot roadway. The appellants have performed maintenance on the roadway, although Roedel has been its primary caretaker.

Roedel filed a complaint to terminate the appellants' use of the 30-foot Right-of-Way, or, in the alternative, to gate the roadway. The appellants counter-claimed that Roedel had wrongly restricted their usage rights over the 30-foot Right-of-Way. The District Court found that the appellants were entitled to a prescriptive easement over the existing twelve-foot roadway at its present location within the 30-foot Right-of-Way, and that Roedel could not interfere with the appellants' use or maintenance of the roadway by using any obstructions.

Roedel also sought an order from the District Court allowing him to construct a roadway over Parcel G. The appellants responded by asserting an ownership right to Parcel G and claiming that Roedel has a limited right, since he can exercise no more rights than passed to him through his agreement with the Palins. The District Court relied on

10

language in the Roedel/Palins agreement that recognized Bennett's ownership in Parcel G to find that Bennett had a "claim to ownership of an undivided one-half interest in and to Parcel G in common with others not parties to this suit." Against appellants' assertions, however, the District Court found that Roedel has an unrestricted right of use, construction, and maintenance for roadway purposes over Parcel G, so long as Roedel does not interfere with appellants' ownership and use rights.

## ISSUE 1

Did the District Court err when it recognized a prescriptive easement for a twelve-foot Right-of-Way across Roedel's property?

The standard of review of a district court's conclusions of law is whether they are correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. *See also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

An easement is a right that one person has to use another person's land for a specific purpose. *See Ruana v. Grigonis* (1996), 275 Mont. 441, 447, 913 P.2d 1247, 1251. It can be created by grant, reservation, exception or covenant, implication or prescription. *See Kuhlman v. Rivera* (1985), 216 Mont. 353, 359, 701 P.2d 982, 985. We stated in *Bache v. Owens* (1994), 267 Mont. 279, 883 P.2d 817, that a property owner can create an easement by a COS if the COS clearly and specifically describes the easement and the document of conveyance refers to the properly recorded COS. We went on to state in *Halverson v. Turner*

11

(1994), 268 Mont. 168, 172, 885 P.2d 1285, 1288, that an express easement of reservation may be created in favor of the grantors if the deed refers to the COS describing the easement, even if the property description in the deed contains no language of an easement reservation. In addition, we stated in *Halverson*, 268 Mont. at 172, 885 P.2d at 1288, that the grantee whose property is being burdened by the easement must have knowledge of its use or its necessity.

Here, the appellants assert that their predecessors in interest, the Palins, expressly reserved an easement over the 30-foot Right-of-Way when they recorded COSs 2482 and 2483 and then sold the parcels while retaining the adjacent remainder, Parcel E. "An easement by reservation must arise from the written documents of conveyance." *Halverson*, 268 Mont. at 172, 885 P.2d at 1289. Therefore, we stated in *Ruana*, 275 Mont. at 448, 913 P.2d at 1252, that this Court's role is to examine the chain of title in question.

The District Court found that the deed from the Palins to the Hubbards referenced COSs 2482 and 2483, and that the descriptions of Parcel A and the 30-foot Right-of-Way defined the properties according to the "attached" certificates. In addition, the grantee-Hubbards had knowledge of the Palins' use of the 30-foot Right-of-Way, as evidenced by the District Court's finding that the Hubbards' subsequent deed to the Richardsons referred to "a use in common with others for roadway purposes." The District Court found that the Hubbards signed their deed to the Richardsons approximately a month before they were conveyed the land by the Palins, and thus, the inclusion of the roadway language in the

12

second, but previously existing, deed indicates that the Hubbards had knowledge of the Palins' use when they received the property from the Palins. Accordingly, the deed referred to the Certificates of Survey and the grantees had knowledge of the use.

Roedel contends that the description of the easement on COSs 2482 and 2483 did not meet the requirement in *Bache* that the easement be clearly and specifically identified on the COS. In *Bache*, we relied on the graphical depiction of the easement's scaled location on the COS, as well as multiple references to language of "easement" and its width, to find that the description was clear and specific enough to create an easement. *Bache*, 267 Mont. at 286, 883 P.2d at 820-21. Here, COS 2482 depicted in detail the 30-foot path over Palins' Parcel E and Parcel G, and bordering the newly created Parcel A. It also labeled the path as a "R/W extend[ing] 15' each side of [center-line]." The "R/W" clearly stands for either right-of-way or roadway, either of which indicates others' use of the strip, and thus, COS 2482 clearly identifies the easement. Certificate of Survey 2483 depicts the 30-foot Right-of-Way parcel in the same position on Parcel E over which COS 2482 extended the "R/W" and states that the purpose of the survey is for "Parcel creation for easement purposed [sic]." Therefore, it also specifically identifies the easement.

The Palins' transfer of Parcel A and the 30-foot Right-of-Way to the Hubbards occurred simultaneously with the filing of the COSs, and the Hubbards' transfer to the Richardsons occurred at virtually the same time. Roedel contends that the predetermined combination of COS 2482, COS 2483, and the transfers manifests that the Palins intended

13

to create an easement for the Hubbards' benefit, which would then immediately merge into their fee ownership when they received the 30-foot Right-of-Way parcel. Although we are unable to determine the true purpose for the manner in which the parties structured their transactions, Roedel's contention is both unreasonable and beyond the scope of analysis in *Bache* and *Halverson*, where the inquiry was limited to whether the COS clearly and specifically identifies an easement, and whether the deed refers to the COS. Those requirements have been met here. Accordingly, we conclude that the Palins reserved an easement over the 30-foot Right-of-Way.

In *Halverson*, we held that an express easement of reservation created by reference to a COS runs with the land and entitles successors in interest to the land to the benefit of the appurtenant easement. *Halverson*, 268 Mont. at 174, 885 P.2d at 1289. Here, the Palins reserved for Parcel E, the dominant tenement, use over the 30-foot Right-of-Way, the servient tenement, and thus, the Palins' successors in interest to Parcel E are entitled to use the 30-foot Right-of-Way. In addition, the District Court found that when the Palins filed COS 3321 to create Parcels 1 and 2, COS 3321 referred to COS 2483, and that each parcel was granted an easement over the 30-foot Right-of-Way. Accordingly, Glenna Palin, who is the direct successor to the Palins' interest in Parcels 1 and 2, received easement rights over the 30-foot Right-of-Way, as did the appellants, who are Glenna Palin's successors in interest in Parcels 1 and 2.

14

The District Court's judgment limited the appellants to a prescriptive right over the existing twelve-foot roadway based upon their past use. We stated in *Lindley v. Maggert* (1982), 198 Mont. 197, 199, 645 P.2d 430, 431, that the owner of a reserved easement may use the easement to the full extent of the right retained. In addition, "the owner of the dominant tenement is not required to make use of the easement as a condition to retaining his interest in the easement." *Halverson*, 268 Mont. at 175, 885 P.2d at 1290. Here, the Palins originally reserved a thirty-foot right of way, and then transferred to the owners of Parcels 1 and 2, via COS 3321, the same thirty-foot easement. Therefore, the appellants are entitled to use the full thirty-foot easement that was retained by the Palins and passed with the land, regardless of whether the entire width of the roadway has been used in the past. Accordingly, we conclude that the District Court erred when it limited the appellants' rights to a twelve-foot prescriptive easement. We reverse that part of the District Court's judgment and hold that appellants are owners of an appurtenant easement over the 30-foot Right-of-Way.

## ISSUE 2

Did the District Court err when it recognized Bennett as an owner of Parcel G?

The standard of review of a district court's findings of fact is whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing *Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417, 852 P.2d 676, 678).

15

Bennett asserts his ownership right in Parcel G as a successor in interest to Glenna Palin. Glenna Palin received Parcel 1, "TOGETHER with a right to use a 60.00 foot easement shown as Parcel G per H-1998 and described in Microfilm No. 214584 records of Lake County, Montana." She then received Parcel 2, "TOGETHER WITH a 60.00 foot road easement shown as Parcel G per H-1998 and also described in Microfilm No. 214584, records of Lake County, Montana."

We stated in *Bodine v. Bodine* (1967), 149 Mont. 29, 39, 422 P.2d 650, 655, that "[a] deed must be construed as it is written, and a reviewing court can neither put words into the deed which are not there nor can it put a construction on words directly contrary to their obvious meaning." Here, the interest is described in each deed as an easement, and in the transfer of Parcel 1, specifically as "a right to use." Other evidence in the record indicates that the Palins had the ability and probably intended to transfer their undivided ownership interest in Parcel G to Glenna Palin but, as written, the deeds fail to do so and transferred only an easement. The language in the deed between Bennett and Glenna Palin adds "(1/2 undivided interest)" to its description of the easement, which is otherwise identical to the description of the easement acquired by Glenna from the Palins. Although the insertion suggests that an ownership right was transferred, Glenna Palin clearly lacked any such ownership rights to transfer.

The District Court relied on language in subsequent, non-deeded agreements to find that Bennett owned an undivided one-half interest in Parcel G. Section 70-20-202, MCA,

16

however, requires that when a deed unambiguously reduces to writing the terms of a grant, no other evidence of the terms of the deed shall be used in construing the deed. Accordingly, neither the addendum to the warranty deed, which clearly was executed on assumptions by the Palins that they had transferred all rights in Parcel G and that Bennett was the current owner, nor the consent to build a roadway, which also referred to Bennett as the owner of Parcel G, can transform the nature of the interest originally acquired by Glenna and retained by the Palins.

Bennett refers to these agreements as "confirmation" that the Palins transferred their ownership interest. However, this Court must rely on the written deeds and, according to those deeds, the Palins transferred only rights of use and retained their undivided one-half ownership interest in Parcel G. Therefore, we conclude that the District Court was clearly erroneous when it found that Bennett was owner of an undivided one-half interest in Parcel G. We reverse that part of the District Court's judgment and conclude that Bennett owns only an easement over Parcel G.

## ISSUE 3

Did the District Court err when it awarded Roedel a right of use, construction, and maintenance over the entire Parcel G?

Appellants assert that the District Court erred when it did not limit Roedel's rights in Parcel G to only the east/west portion of Parcel G. They rely on the fact that the Palins could only consent to transfer to Roedel the rights that they owned, which, per the addendum to the

17

warranty deed, were limited to the east/west portion of Parcel G, since that was the only access required for the property they owned at the time of the addendum. They also assert that the District Court erred in awarding Roedel a right to use and maintain a roadway when the Consent to Build a Roadway and Indemnity only "authorize[d] Roedel to construct a roadway" over Parcel G.

First, the appellants' contention that the Palins' limited ownership restricted what portion of Parcel G Roedel could have acquired an interest in is unfounded as a result of this Court's conclusion that the Palins have always retained their undivided one-half interest in Parcel G. The consent does not, on its face, restrict Roedel's rights to a certain portion of Parcel G. Rather, any potential restriction in the consent between Palins and Roedel as to what portion of Parcel G the agreement covers must derive solely from the addendum between Bennett and Palins, as incorporated by the consent. However, the addendum is meaningless because the Palins always retained ownership of Parcel G. Accordingly, we conclude that the Palins had the ability to give Roedel an interest over all of Parcel G, and thus, the District Court did not err when it did not restrict Roedel's rights to just the east/west portion of Parcel G.

Second, the appellants lack standing to challenge the extent of the rights that Roedel received from the Palins in their Consent to Build a Roadway and Indemnity. In *Ludwig v. Spoklie* (Mont. 1996), 930 P.2d 56, 53 St. Rep. 1420, we discussed a property owner's standing to sue over an agreement entered into between two easement-holders on the

18

property. We held that the owner, who was neither a party nor an intended beneficiary of the agreement between the easement-holders, lacked standing "to enforce the specific terms and conditions contained within [the agreement]." *Ludwig*, 930 P.2d at 59, 53 St. Rep. at 1421-22. *See also Patton v. Madison County* (1994), 265 Mont. 362, 877 P.2d 993.

Here, the Palins and Roedel executed the consent. Therefore, the Palins, as a party to the consent, would have standing to challenge the District Court's interpretation of the agreement. The appellants, however, were not a party to the agreement, and unless Roedel interferes with their rights to use Parcel G, the appellants lack standing to challenge the extent of Roedel's rights. The appellants do not claim that Roedel has interfered with their right to use Parcel G. They assert only that he has interfered with their ownership interest. Furthermore, the District Court qualified its finding and made Roedel's rights to use, construct, and maintain on Parcel G conditional upon the fact that he not interfere with appellants' rights in Parcel G. Therefore, the appellants' rights in Parcel G have been sufficiently protected, and without a challenge from a party in interest to the agreement, we have no basis for setting aside the District Court's judgment regarding Roedel's rights on Parcel G.

Although the District Court's determination of the parties' rights in Parcel G relied, at least in part, on the clearly erroneous finding that Bennett was an owner of Parcel G, we "will affirm a district court's decision which reaches the right result, regardless of the court's reasoning." *In re Marriage of Shupe* (1996), 276 Mont. 409, 419, 916 P.2d 744, 750.

19

As we have stated, the Palins retained an undivided one-half ownership interest in the whole of Parcel G and were free to transfer rights of use to Roedel over all of Parcel G. Accordingly, we affirm that part of the District Court's judgment which awarded Roedel a right to use, construct, and maintain over all of Parcel G.

In sum, we reverse the District Court's judgment that the appellants are limited to a twelve-foot prescriptive easement over the 30-foot Right-of-Way, and hold that the appellants are owners of an appurtenant easement over the entire 30-foot Right-of-Way. We also reverse the District Court's finding that Bennett owns an undivided one-half interest in Parcel G. We conclude that the Palins retained an undivided one-half ownership interest in Parcel G, and that Bennett, along with the other appellants, owns only a right to use Parcel G. We affirm the District Court's finding that Roedel has a right to use, construct, and maintain over all of Parcel G and, finally, we order that this opinion is binding on only the parties to this litigation.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

20