NO.   95-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

LEFFINGWELL RANCH, INC., a Montana corporation;
and PECKENPAUGH RANCHES, INC., a Montana corporation,

     Plaintiffs and Respondents,

   v.

CARLO CIERI, JIM HUNT, and TERRY SARRAZIN,
Members of the Board of County Commissioners of
Park County, Montana; PARK COUNTY, a political
subdivision of the State of Montana,

     Defendants,

  and

ELK PARK RANCH, INC., a Montana Corporation,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and for the County of Park,
                The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Karl Knuchel, Attorney at Law,
          Livingston, Montana (for Elk Park Ranch, Inc.)

       For Respondents:

          Jeffrey N. Pence, Huppert & Swindlehurst,
          Livingston, Montana

FILED

MAY 14 1996

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  March 7, 1996

Decided:  May 14, 1996

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On April 19, 1993, Leffingwell Ranch, Inc., and Peckenpaugh Ranches, Inc., filed a complaint in the District Court for the Sixth Judicial District in Park County in which they sought a declaratory judgment regarding the status of Miles Creek Road and the extent to which the defendant, Elk Park Ranch, Inc., could use that road. Following a nonjury trial, the District Court entered its judgment and decree in which it held that Miles Creek Road was not a county road and that no public prescriptive easement had ever been established over the road. The decree limited Elk Park Ranch's easements over Miles Creek Road to their historical use and specifically enjoined Elk Park Ranch from accessing its land development over the road. Elk Park Ranch appeals the District Court's decree. We affirm the District Court.

We address two issues on appeal:

1. Did the District Court err when it determined that Miles Creek Road was not a county road because no public prescriptive easement had ever been established over that road?

2. Did the District Court err when it limited Elk Park Ranch's use of Miles Creek Road to its historical use and enjoined Elk Park from accessing its land development by means of that road?

FACTUAL BACKGROUND

Leffingwell Ranch, Inc., is a family ranch corporation which owns real property in the Brackett Creek area of Park County. Peckenpaugh Ranches, Inc., is also a family ranch corporation with land holdings in the Brackett Creek area. In 1988, Elk Park Ranch,

2

Inc., purchased substantial land in the Brackett Creek area from the Brackett Creek Grazing Association. In 1993, Elk Park filed a quitclaim deed dividing its property into 174 20-acre aliquot parcels. Elk Park's intent was to develop and sell these smaller parcels. Elk Park planned to use Miles Creek Road, which crosses both the Leffingwell Ranch and the Peckenpaugh Ranch, to access the 20-acre parcels.

Miles Creek Road leaves the main Brackett Creek Road at a point on the Leffingwell Ranch and continues in a westerly direction for approximately one-quarter mile to the Leffingwell Ranch compound. The road then turns south and crosses Brackett Creek and continues across the northeast corner of the Peckenpaugh Ranch. As it leaves the Peckenpaugh Ranch, the road forks and one branch returns northeast to the Leffingwell Ranch; the other branch continues southeast into Elk Park Ranch's property.

Miles Creek Road was originally developed by James Proffitt, J.W. Camp, James Curdy, and Jim Christie during the late 1890s as an access route to their homesteads. In 1904, Mary Leffingwell's father, Charles Bridgman, purchased what is now the Leffingwell Ranch from James Proffitt. In 1927, Bridgman granted a private easement over Miles Creek Road to J.W. Camp and James Curdy. James Curdy, in turn, granted a similar easement to J.W. Camp. Both easements granted rights-of-way thirty feet in width over the existing road for purposes of ingress and egress and required that the rights-of-way not be fenced, that any gates in place across the grantor's property be kept closed at all times, and that the

failure to do so would result in the loss of the easements. Camp was a predecessor in interest to Elk Park. However, when the easements were executed in 1927 they were only intended to benefit the small portion of land owned at that time by Camp and Curdy. The property that Elk Park now intends to access includes several additional sections of land which were acquired after the easements were conveyed in 1927.

The Bridgmans rerouted the lower portion of Miles Creek Road in the early 1930s through what is now the Leffingwell Ranch compound. For the most part, the Leffingwells maintained the road, although in the spring of 1948 Park County repaired the bridge on Miles Creek Road across Brackett Creek in exchange for gravel from the Leffingwell Ranch property. In the late 1970s a private logging company rebuilt this same bridge with the Leffingwell's permission.

County road records indicate nominal expenditures for Miles Creek Road during the years 1953 and 1954. Although County road crews sometimes plowed the road up to the Leffingwells' buildings during the 1950s and 1960s, the plowing was done out of courtesy rather than as part of an official road maintenance program. The County ceased all work on the road by 1968.

Both the Leffingwells and the Peckenpaughs have always maintained gates on Miles Creek Road. Although at times they have given permission to members of the public to travel over the road for access to Forest Service land for recreational purposes or hunting, at least one of the gates located on the Leffingwell Ranch

4

has been regularly locked, particularly during hunting season, since the early 1950s. All of the owners and parties in interest in that area, including Elk Park Ranch, have maintained separate locks on various gates on Miles Creek Road.

In 1972, a group of local hunters and sportsmen tried to have Miles Creek Road opened for access as a public road. After conducting a hearing, the Park County Commissioners concluded that the road was private. This position was reaffirmed in 1988 by the Park County Attorney in a letter to the local title company. In his letter, the County Attorney stated:

> My conclusion at this time is that it would be very difficult for Park County to maintain that [Miles Creek Road] is a public road. The records at the court house only show that it was maintained at various times, but a finding by past commissioners that it was a private road indicates Park County never intended to assert control over it. From the facts presented to me, it is not clear that a prescriptive right was ever established on the road. Even if that is established, it appears it may well have been abandoned.

However, in a letter to the Leffingwell Ranch in 1993, the County Attorney reversed his position and advised the Leffingwells that the Park County Commissioners had decided that the road was in fact a county road and that the Leffingwells could no longer maintain a gate across it.

In response to the County Attorney's 1993 letter, both the Leffingwell Ranch and the Peckenpaugh Ranch filed this action in the Sixth Judicial District Court. In their complaint, the plaintiffs alleged that Miles Creek Road is a private road to which Park County has no right or interest; that any attempt by Elk Park

5

to access its planned development by means of Miles Creek Road would be in derogation of the intention and contemplation of the original 1927 agreements and would result in an overburdening of the easements; and that any attempt by Elk Park to access land not contemplated by the 1927 easements for any purposes other than for agricultural purposes would constitute a misuse of the easements.

Following a hearing, the District Court entered its judgment and decree. The Court concluded that Park County has no legal right or interest in Miles Creek Road; that no prescriptive easement has ever been established over the road; and that the 1927 easements were created and remain solely for the purpose of ingress and egress for agricultural purposes. The court permanently enjoined Elk Park from accessing its property by means of Miles Creek Road for development purposes or for anything other than agricultural purposes. The court further enjoined Elk Park Ranch from accessing that portion of its properties which were not contemplated by the 1927 easements and to which the 1927 easements are not appurtenant.

## ISSUE 1

Did the District Court err when it determined that Miles Creek Road was not *a* county road because no public prescriptive easement had ever been established over that road?

We review a district court's findings of fact to determine whether they are clearly erroneous. Rule 52(a), M.R.Civ.P. See also *Daines v.* Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. We

review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), *271* Mont. 459, 469, 898 P.2d 680, 686.

In order to establish an easement by prescription, the party claiming the easement "must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." *Public Lands Access Assoc. v. Boone & Crockett Club Foundation* (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (quoting *Keebler v. Harding* (1991), 247 Mont. 518, 521, 807 P.2d 1354, 1356). Since 1953, the statutory period has been five years. Section 70-19-404, MCA. Prior to that time the statutory period was ten years. Section 93-2507, RCM (1947). The burden is on the party seeking to establish the prescriptive easement to prove all elements of prescription. *Public Lands Access,* 259 Mont. at 283, 856 P.2d at 527.

In this case, Elk Park Ranch contends that the District Court erred when it concluded that a public prescriptive easement had not been established over Miles Creek Road. Elk Park maintains that the public's use of Miles Creek Road for recreational and other purposes was adverse and was not by permission of the underlying landowners. Elk Park further maintains that there was an assumption of control of the road by Park County, which performed maintenance of the road in a continuous and uninterrupted manner for at least twelve years.

It is well-established that when permissive use is shown, an easement cannot be established since prescription is based on adverse use. *Tanner v. Dream Island, Inc.* (Mont. 1996), 913 P.2d 641, 648, 53 St. Rep. 208, 212.

George Leffingwell testified that in the 1960s he personally gave permission to agents of the Forest Service to access the Bangtail Ranger Station and to Montana State University to access a weather station it had established in the Bangtail area. John Hamm, a local rancher and a member of the Brackett Creek Grazing Association, which owned Elk Park's property from 1965 to 1988, testified that he has always obtained permission from the Leffingwells to access Forest Service land over Miles Creek Road. In addition, Sue Ward, who owned Elk Park's property **from 1951 to** 1964, testified that she obtained permission from the Leffingwells on a yearly basis to use Miles Creek Road to access her property.

Although at times the Leffingwells did let other members of the public use the road with their permission to access Forest Service land, George Leffingwell testified that he and his brother sometimes denied permission to recreationalists who sought access to public lands over Miles Creek Road. In addition to these explicit denials of access, there was evidence that the Leffingwells and the Peckenpaughs restricted access to Miles Creek Road with locked gates, private road signs, no trespassing signs, and orange painted posts.

8

Testimony at trial established that even Elk Park treated Miles Creek Road as a private road and denied access to members of the public. In fact, in 1989 one of Elk Park's officers put a lock on one of the gates on Miles Creek Road because he had a hunting camp set up on Canyon Creek and did not want other hunters entering the area. As the District Court stated in its findings of fact: "It is grossly inconsistent for . . . Elk Park to contend they could so lock up the Miles Creek Road for their own use and purposes, and now contend it is a public road."

In *Descheemaeker v. Anderson* (1957), *131* Mont. 322, 325-26, 310 P.2d *507, 589,* we held that to establish a public right-of-way by prescription

> the evidence must be convincing that the public have pursued a definite, fixed course, continuously and uninterruptedly, and coupled it with an assumption of control and right of use adversely under a claim or color of right, and not merely by the owner's permission, over it for the statutory period . . .

Plaintiffs produced substantial credible evidence that use of Miles Creek Road by members of the public was with their permission. However, Elk Park contends that Park County's maintenance of the road, which was "by the public and for public good," is sufficient to demonstrate the elements of prescription. Elk Park maintains that the County's occasional acts of grading and plowing the road are adequate to establish Miles Creek Road as a public road.

This Court has held that adverse use by the public combined with the grading and maintaining of a road without the landowner's permission is sufficient to establish adverse control. *Rasmussen v.*

9

*Fowler* (1990), 245 Mont. 308, 312, 800 P.2d 1053, 1056; *McClurg v. Flathead County Comm'rs* (1980), 188 Mont. 20, 24, 610 P.2d 1153, 1156. For example, in *McClurg*, we determined that a public prescriptive easement existed when most members of the public had never asked for permission to use the road and when the County had graded, graveled, and performed maintenance on the road for a period in excess of twenty-five years. *McClurg*, 188 Mont. 20, 610 P.2d 1153.

In this case, however, the testimony at trial established that most of the limited work which Park County performed on Miles Creek Road was based on courtesy and cooperation with the local ranchers and not because of public duty. In addition, the testimony established that any work which was performed was not part of any regularly scheduled maintenance program and ceased after 1968.

Clarence Curdy lived on Miles Creek Road from 1918 until 1936. He testified that the Camps and the Curdys maintained the road with a horse-pulled drag during that period. He further testified that he never saw the County perform any kind of maintenance on the road in those years. Russell Bridgman, who lived on the Leffingwell Ranch on and off from 1912 until 1940 confirmed Curdy's testimony. He testified that he had never seen Park County road crews on the road past the Leffingwell Ranch compound during that time.

Mary Leffingwell, who has lived on the Leffingwell Ranch since 1914, testified that in the early years local residents maintained Miles Creek Road. In later years, the Park County road crews would

10

grade the road on their way to the Leffingwell Ranch to "warm up and use the telephone or borrow equipment or use the shop."

George Leffingwell testified that in 1948 or 1949 the County replaced the bridge over Brackett Creek near the Leffingwell Ranch compound in exchange for gravel from the ranch. At the hearing, George did not recall that Park County had ever performed any regular maintenance or repair work on Miles Creek Road, although he stated that at times members of the county road crews would run the snowplow as a courtesy into the Leffingwell Ranch compound. In addition, George testified that in 1959, when he was driving a truck for the County, he was permitted to take some gravel home to gravel a portion of Miles Creek Road. In exchange, George permitted Park County to take rock and gravel from the Leffingwell Ranch without charge. George used his own ranch equipment to spread the gravel.

Sue Ward, who owned Elk Park's property from 1951 to 1964, testified that at one time she and her husband Ted had asked the County to repair Miles Creek Road, but the County had refused because "it wasn't in their territory." The Wards lived in the Brackett Creek area from 1947 until 1974. Sue Ward testified that she had not seen any Park County road crews on Miles Creek Road during that time.

Kiel Peckenpaugh testified that he hauled calcite from a local mine to improve the Peckenpaugh's portion of the road and hired private crews to work on the road. He testified that he had not seen Park County crews working on the road.

11

Robert Youngberg, who was Park County road foreman from 1968 until 1989, testified that the County did not perform any work on Miles Creek Road after 1968. He said that prior to that **time** the County had occasionally bladed or plowed the road but he acknowledged that it was common practice in his early years with the County to plow out ranchers' private lanes as a courtesy. Although Youngberg testified that Miles Creek Road had been designated a county road (56B) on the official county road maps, there was no evidence that anyone had ever petitioned for the establishment of Miles Creek Road or attempted to dedicate the road to the public.

The District Court reviewed testimony offered by the defendants at trial and found that:

> [E]ven assuming the defense testimony to be true, it is far from sufficient to prove that the Miles Creek road had ever become a public road by statutory petition and process, or by deed, dedication, condemnation or prescription, and it was far from sufficient to offset or overcome the overwhelming evidence presented by plaintiffs.

Based on our review of the record, we hold that the District Court's findings of fact are supported by substantial evidence and are not clearly erroneous. We therefore affirm the District Court's conclusion that the public has never established a prescriptive easement over Miles Creek Road and has no right to travel over the road without permission of the adjacent landowners.

12

ISSUE 2

Did the District Court err when it limited Elk Park Ranch's use of Miles Creek Road to its historical use and enjoined Elk Park from accessing its land development by means of that road?

As stated above, our review of a district court's findings of fact and conclusions of law is two-fold. We review a district court's findings of fact to determine whether they are clearly erroneous; we review a district court's conclusions of law to determine whether they are correct. *Daines v. Knight* (1995), *269* Mont. *320, 324, 888* P.2d 904, 9 0 6; *Carbon County v. Union Reserve Coal Co.* (1 9 9 5), 271 Mont. 459, 469, 898 P.2d 680, 686.

In this case, the easements over Miles Creek Road were created by general warranty deeds in 1927 and provided for ingress and egress to the Camp and Curdy homesteads. The easements further required that the rights-of-way not be fenced and that any gates in place across the grantor's property be kept closed at all times. The general warranty deeds provided that abuse of the terms of the easements would result in the loss of the easements. Based on the terms of the easements and the historical use of the easements, the District Court concluded that:

> [A]ny expansion or inconsistent uses of the easements
> created by the 1927 warranty deeds would constitute an
> overburdening of these easements, and therefore would be
> in derogation of the common law and section 70-17-106,
> MCA, and defendants should be enjoined therefrom.

Section 70-17-106, MCA, provides that: "The extent of a servitude is determined by the terms of the grant or the nature of

13

the enjoyment by which it was acquired."  In this case, the warranty deeds which created the 1927 easements did not specifically set forth the extent of the easements other than to provide that the Camps and the Curdys could use Miles Creek Road for "ingress and egress."  However, as we stated in *Strahan v. Bush* (1989), 237 Mont. 265, 268, 773 P.2d 718, 720:

> If the easement is not specifically defined, it need only be such as is reasonably necessary and convenient for the purpose for which it was created.  It is sometimes held . . . where the grant or reservation of an easement is general in its terms, that an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to that particular course or manner.

In this case, Miles Creek Road and the 1927 easements have never been used to access more than two or three homesteads and have only been employed for related agricultural purposes.  When the road was established in the 1880s, it was probably no more than a horse or wagon trail to the early Camp, Curdy, and Christie homesteads.  When the easements were conveyed in 1927 only the Camps, Curdys, and Bridgmans lived on the road, and all of them made their living from agricultural pursuits.  Thus, at the time the easements were granted, the "ingress and egress" set forth by the terms of the general warranty deeds clearly did not contemplate anything more than limited access by the Camps and the Curdys to their property for agricultural purposes.  In addition, the written requirement that the gates be kept closed and the right-of-way not be fenced is evidence of the fact that the parties did not contemplate substantial traffic or intend that the easements could

be enlarged. As we stated *in Lindley v. Maggert* (1982), *198* Mont. 197, 199, 645 P.2d 430, 432:

> [N]o use may be made of the right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created.

In this case, Elk Park has divided its property into 174 parcels and has indicated that it intends to resell the individual parcels for development. Elk Park has further indicated that it intends to access the developments by means of Miles Creek Road. As a result, 174 families would use Miles Creek Road, which travels directly though the Leffingwell Ranch compound, for ingress and egress to their homes. As the District Court noted in its findings of fact:

> A very significant factor in this case is that Miles Creek road runs right through the Leffingwell Ranch and building compound and that they not only have had a family cattle business there for about 90 years, but since 1934 have operated a dude ranch under the name and style of G Bar M Guest Ranch. This limits its guests to ten or fifteen at a time so that the guests can have a more personal experience of the old west and cattle ranching. Any expansion of the use of Miles Creek road beyond its present use would seriously impact the Leffingwells' guest ranch business, which is an essential monetary supplement to their cattle operation.

Furthermore, the District Court took note of the fact that Elk Park Ranch was aware of the restrictions on its access to its property in 1988 when it demanded a $10,000 reduction in the purchase price of its property for that reason, and in 1989 when it filed suit against Security Title of Park County, Inc., and the American Title Insurance Company complaining that the easements "severely

15

restricted access."  In light of Elk Park's prior lawsuit, the District Court noted the inconsistency of Elk Park's present position and stated that "Elk Park should be judicially estopped from now taking a contrary position about the road."

Elk Park also challenges the District Court's conclusion that the easements cannot be enlarged to access property not owned by Camp or Curdy in 1927 when the easements were conveyed.  Elk Park contends that although most of the property it intends to access by means of Miles Creek Road is property which was acquired after 1927, that property was later acquired by one of Camp's successors and is contiguous to the remainder of the Camp property.

When the easements were executed in 1927, the Camps owned only Section 8 and the NH of Section 18, T1N, R8E, and the Curdys only owned the S½ of Section 6, T1N, R8E, and the W½ of Section 20. Although the 1927 easements limit Elk Park's access to Section 8 and the N½ of Section 18, Elk Park now proposes to use the 1927 easements to access the following additional property which was not owned by either the Camps or the Curdys in 1927:

> All of Sections 17, 18, and 21, E½20; Lots 1, 2 and S½NE¼
> of Section 19;  and N½NW¼NE¼, N½NE¼NE¼, NW¼NE¼ and E½NW¼
> of Section 18, T1N, R8E, M.P.M.

The 1927 easements are not appurtenant to any of the property which Elk Park now proposes to access.

As the Court of Appeals of Arizona noted:

> It is elementary law that an easement cannot be extended
> by the owner of the dominant tenement to other land owned
> by him adjacent to or beyond the land to which it is
> appurtenant,  for such extension would constitute an

16

unreasonable increase of the burden of the servient tenement.

*DND Neffson Co. v. Galleria Partners* (Ariz. App. 1987), 745 P.2d 206, 207. In this case, the 1927 easements are appurtenant only to those lands held by the grantees at the time the easements were granted, and therefore cannot be used to access after-acquired property.

We therefore hold that the District Court correctly concluded that Elk Park cannot access its development over the 1927 easements because the use proposed by Elk Park was not contemplated by the original parties to the easements, would be inconsistent with the historical use of the easements, and would constitute an improper burdening of those easements. We further hold that the District Court correctly concluded that Elk Park cannot use the easements to access property which was not owned by James Camp in 1927 because easements cannot be used to access after-acquired property. We therefore affirm the order of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

17