FILED

December 14 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0265

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 264

GREG STEED and CHERALYN STEED, and
WILLIAM L. SANGUINE and PHYLLIS SANGUINE,

      Plaintiffs and Appellants,

    v.

BRUCE R. SOLSO, MARGARET V. SOLSO, RICHARD
CARTER AND DIANE M. CARTER, Trustees of the
Carter Family Trust, JOEL BERNARD ARBIC, LAWRENCE
O . CASAZZA, MARY BETH CASAZZA, CHAD
YOUNGLOVE, VICKI A. TISDELL, GARY D. TISDELL,
and "PLAT 1706" Easement Holders Association,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and For the County of Lincoln, Cause No. DV 08-208
                Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           J. Tiffin Hall, Attorney at Law, Eureka, Montana

      For Appellees:

           Amy N. Guth, Attorney at Law, Libby, Montana

                        Submitted on Briefs:  November 4, 2010

                                Decided:  December 14, 2010

Filed:

              _____
                             Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 This appeal arises from an easement dispute among several property owners living on or near the shores of Glen Lake near Eureka, Montana. The Steeds own the servient estate of a 6-foot-wide pedestrian easement that allows neighboring landowners access to Glen Lake. The Steeds filed the original complaint seeking, among other things, to quiet title and extinguish the easement. The Sanguines own property adjacent to the easement. They later joined the Steeds' suit as plaintiffs, claiming trespass by Larry Casazza, one of the easement holders. Following a non-jury trial, the Nineteenth Judicial District Court for Lincoln County ruled that the easement was valid and the easement holders were entitled to use and maintain the easement. The Court awarded $10 in damages to the Sanguines for trespass. The Steeds and Sanguines appeal. We affirm, but vacate the District Court's findings of fact and conclusions of law related to the proposed dock.

**ISSUES**

¶2 A restatement of the dispositive issues on appeal is:

¶3 Did the District Court err in denying the Steeds'/Sanguines' motion for summary judgment?

¶4 Are the District Court's conclusions of law correct?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 In October 2006, the Steeds purchased approximately 3.5 acres (a double lot) of lakefront property on Glen Lake from Peter Klinke (Klinke) and his daughter. At the time of purchase, the Steeds were told that a 6-foot easement ran along the northwest boundary of the property and that the easement provided access to Glen Lake for certain

2

neighbors without lakefront property. Steeds assert that the title search revealed 2 titles granting easement rights to 5 families.

¶6 The property purchased by the Steeds was part of a larger parcel of property (20+ acres) owned for many years by Klinke. In 1989, Klinke divided this large parcel into smaller parcels. Subsequently, successive owners subdivided one of these parcels into 7 more lots. In each instance, the deeds given to the lot buyers contained grants of easement rights to access Glen Lake. Although some of the deeds contained drafting errors, the District Court concluded that such clerical errors did not affect the validity of the easements. For ease of review, given the number of persons originally parties to this lawsuit and the path the litigation has taken, the following table reflects Klinke's original division of his property and the subsequent divisions, as well as the name of the parcel's current owner and that owner's status in this lawsuit:

| Klinke Original Lot Division | Current Owners and (Month and Year of Purchase) | | | Status |
|---|---|---|---|---|
| Parcel A | Murray, Dale, and Follensbee (7/1992) | | | Settled and/or dismissed |
| Unnamed | Casazza (5/1996) | | | Defendants/Appellees |
| Parcel B | Arbic (2/2003) | | | Defendant/Appellee |
| Parcel C | Carter (7/1996) | | | Defendants/Appellees |
| Parcel D | Solso (11/1994) | | | Defendants/Appellees |
| Parcel E | Further subdivided into Lots A - C: | | | Stipulated settlements with Steeds |
| | Lot A | Tisdell (6/1994) | | |
| | Lot B | Younglove (12/2001) | | |
| | Lot C – further subdivided into Lots 1 - 5: | | | |
| | | Lot 1 | Price (not available) | Defaulted |
| | | Lot 2 | Daniels (not available) | Defaulted |
| | | Lot 3 | Baker (5/2002) | Settled with Steeds |
| | | Lot 4 | Baker (10/2008) | Settled with Steeds |
| | | Lot 5 | Follensbee (7/2004) | Settled and dismissed |
| Parcel F | Steed | | | Plaintiffs/Appellants |

¶7 During the course of this litigation, the Dales and the Murrays settled with the Steeds and Sanguines and are no longer defendants in this case. The Daniels and Prices had default judgments entered against them by the District Court and are no longer defendants. Also, the Steeds and the Sanguines settled with the Follensbees and the Bakers. Younglove and the Tisdells entered into stipulated settlement agreements with the Steeds and Sanguines. Under these agreements, if the easement is extinguished, the Steeds will pay Younglove and Tisdells $5,000 each. If the easement is not extinguished, Younglove and the Tisdells retain their easement rights.

¶8 At the time the Steeds purchased their property from Klinke, the easement had seen little foot traffic and was primarily used by deer and other game. It was covered with brush and small trees. The easement is approximately 400 feet long and 6 feet wide. As the trail nears the shores of Glen Lake, the land drops approximately 10 to 12 feet into a steep bluff. The District Court described access to the lakeshore from that part of the easement as being "all but unusable except for the most intrepid and athletic adventurer."

¶9 The Steeds purchased the double-lot Parcel F in October 2006 with the intention of having the boundary between the 2 lots redrawn. They then planned to sell the lot that had Klinke's former house on it and build a new home on the second lot. The second lot carried the easement.

¶10 On Memorial Day weekend in May 2007, the Steeds visited the property. When they arrived they encountered Defendant/Appellee Larry Casazza clearing the easement. Casazza and a friend had been working for approximately an hour. Using a chain saw, a pulaski, various hand tools, a trailer and an ATV, the two men had cleared much of the

4

brush from the entire 6-foot width of the easement, had cut some small trees, and had moved and arranged rocks along the easement to create switchbacks for easier foot access to the lake.

¶11 The Steeds introduced themselves to Casazza, who did not know that Klinke had sold the property to the Steeds. Casazza explained to the Steeds his plan for the easement, including the removal of at least 3 more trees, excavation of the bluff for installation of steps down to the shore and construction of a dock for the easement holders. The Steeds immediately protested the removal of certain trees and the use of a wheeled vehicle on the easement. Casazza replied that his interpretation of the easement language did not preclude use of an ATV or wheeled vehicles on the trail. Casazza agreed, however, to not cut the designated trees but rather to drive his ATV around them. He also agreed to restrict future use of the ATV on the easement after his current maintenance project was complete.

¶12 To avoid the remaining trees while he continued clearing the easement to the bluff, Casazza had to drive his ATV onto the Sanguines' property. He decided to continue working, drive on Sanguines' property and call them later. By the time Casazza had finished working that day, in addition to clearing brush and small trees, he had roughly excavated the bluff. This required that he remove dirt from around the root bed of one of the trees Steed had wanted to protect. Casazza also had built a crude set of steps by placing concrete pavers and rocks down the excavated portion of the bluff, creating a slightly more accessible path to the lakeshore. Casazza did not perform any further

maintenance or improvement of the easement during the summer of 2007 and agreed to refrain from further work until resolution of his differences with the Steeds.

¶13    When Casazza subsequently spoke to the Sanguines several days later, Mr. Sanguine denied him permission to use or access his property. Casazza agreed to stay off Sanguines' property. Not long after this conversation, Sanguine visited his wooded, undeveloped lakefront lot and flagged the boundary line of his property adjacent to the easement. He discovered several places where Casazza had encroached onto his property.

¶14    Within weeks of meeting Casazza on the easement in May, the Steeds retained an attorney to explore their rights vis-à-vis the easement. The attorney sent Casazza a letter setting forth the Steeds' position that wheeled vehicles are not be used on the easement and that Casazza refrain from any future easement maintenance without first notifying the Steeds. While acknowledging that the easement granted the right to have a dock, Steeds' lawyer expressed that such right was to a "small swimming dock." Steeds' letter expressed their desire to be good neighbors and to resolve this easement matter without the need for litigation.

¶15    After numerous unproductive communications between the Steeds and Casazza over several weeks, Casazza informed the other easement holders of the ongoing dispute with the Steeds. Several of them, with Casazza, created a nonprofit corporation, Plat 1706 Easement Holders Association (EHA or the Association). "Plat 1706" refers to the plat which created many of the lots the easement holders own.

¶16 While the Steeds and the easement holders continued to disagree over the nature and scope of the easement, in August 2007, the Steeds began building their new home situated approximately 25 feet from the easement. They also obtained a permit to build an "L" shaped dock near the shore location not far from the easement.

¶17 Casazza, in turn, applied to Lincoln County for permission to construct a dock at the easement's shoreline location. He later withdrew his first application and filed a second. He again withdrew the dock application pending the outcome of this lawsuit.

¶18 The summer of 2008 came and went without resolution of the easement dispute. On September 9, 2008, the EHA sent a letter to the Steeds informing them the Association would begin maintenance and improvement work on the easement in October 2008, including removal of the 3 trees Steed had asked to be protected and construction of stairs to the lakeshore. The letter also indicated that the Association would build a dock the following spring.

¶19 On September 19, 2008, the Steeds filed their initial complaint, seeking a preliminary injunction, among other things. As a result, the easement holders again agreed to forego easement improvements until the matter was resolved. Steeds subsequently filed 2 amended complaints, ultimately naming Sanguines as additional plaintiffs seeking damages for trespass based on Casazza's numerous encroachments onto their property in May 2007. In response to the complaint, the majority of the named defendants as well as the Association engaged a single attorney to represent them. The Follensbees, however, retained separate counsel.

¶20 Subsequently, in December 2009, the Follensbees filed a motion for summary judgment. The Steeds and Sanguines responded with a motion for summary judgment against all the Defendants. In February 2010, the District Court granted the Follensbees' summary judgment motion, concluding that they possessed a legitimate easement.

¶21 Applying § 70-17-111, MCA, the Montana statute which addresses how servitudes may be extinguished, the court concluded that the Follensbees had done nothing to justify terminating their easement rights. Addressing the Steeds'/Sanguines' complaint that the easement had become overburdened by subdivision, the court determined this was a "speculative" concern given that to the date of the court's order, other than Casazza's early maintenance, it appeared no one had used the easement other than the Steeds' housing contractor. The court was unwilling to impose a "preemptive termination of . . . valuable property right[s]" of the easement holders when there was no showing that Steeds' concerns regarding significantly increased foot traffic, odor, noise, litter, and pets had come to fruition.

¶22 On the same day the court granted Follensbees' motion, the District Court issued its order denying Steeds'/Sanguines' motion for summary judgment addressed to the remaining defendants. The court employed the same reasoning as it had in the Follensbees' order on summary judgment. It held that all the Defendants owned valid easements. The District Court again concluded there was no legal basis under § 70-17-111, MCA, to terminate valid easement rights. The court acknowledged that common law prohibited the overburdening of a servient estate but found that Steeds'/Sanguines' concerns of overburdening were purely speculative at that time. The

8

court further ruled that material issues of disputed facts pertaining to Casazza's use of the easement, his alleged trespass and damages, and defendants' counterclaims, remained; therefore it scheduled the matter for trial.

¶23 On April 29, 2010, this matter with the remaining defendants Solsos, Casazzas, Carters, Arbic and the Easement Holders Association, was heard by the District Court without a jury. The bench trial included testimony of plaintiffs Greg Steed, William Sanguine, and defendants Larry Casazza and Richard Carter.

¶24 The District Court entered its Findings of Fact, Conclusions of Law, and Judgment on May 6, 2010. The court held the easement as to all remaining defendants was valid and would not be extinguished, and that the easement holders were entitled to improve and maintain the easement, including using an ATV for maintenance, construction, and tree removal. The court stated the easement holders would be entitled to construct a dock if authorized by the appropriate county regulatory agency. The court awarded $10 to the Sanguines for nominal damages resulting from Casazza's trespass. The District Court dismissed all counterclaims and instructed that each party bear his or her own costs.

¶25 The Steeds and Sanguines filed a timely appeal.

**STANDARDS OF REVIEW**

¶26 We review a ruling on summary judgment de novo, applying the same M. R. Civ. P. 56 analysis used by the district court. *Goettel v. Estate of Ballard*, 2010 MT 140, ¶ 10, 356 Mont. 527, 234 P.3d 99.

¶27 This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. M. R. Civ. P. 52(a) A district court's

9

findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. We review a district court's conclusions of law to determine whether those conclusions are correct. *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, 28 P.3d 467 (citation omitted).

## DISCUSSION

¶28     Because resolution of the 2 issues presented on appeal generates the same overall analysis, we consider the 2 issues together.

¶29     Initially, we note that while the language granting the easement to the various easement holders differed in some minor respects among the deeds, the deeds in general granted "a non-exclusive easement for ingress, egress, dock construction and utility."

¶30     The Steeds/Sanguines assert on appeal that the District Court's Order Granting Follensbees' Motion for Summary Judgment "effectively granted summary judgment to all the easement holders," as it pertains to extinguishment. In other words, when the District Court ruled that the Follensbees' easements would not be extinguished, the District Court effectively precluded any contrary ruling as to the remaining easement holders. The Steeds/Sanguines therefore submit that the only issues remaining for trial after this Order was entered were (1) the motion to extinguish Casazzas' easement rights, (2) the trespass and property remediation claim, and (3) the Defendants' counterclaims of

loss of quiet enjoyment and abuse of process. In addition, the Steeds/Sanguines argue that the easement should be extinguished as to all easement holders based on the concept of "overburdening" as recognized under common law, and under § 70-17-111(1)(c), MCA.

¶31 Steeds/Sanguines argue that the originally-granted easements favored only 2 lots for use by 5 families; now, the easements favor 15 lots with at least as many families, plus the potential use by guests and tenants. They express their concerns about potential noise, trash, heavy traffic, and pets, pointing out the lack of parking or bathroom facilities near the easement. They also assert a concern about liability for any injuries that may occur on the easement and any potentially adverse impact on the value of their property as a result of a heavily-used recreational easement.

¶32 The District Court reviewed several Montana cases addressing overburdening an easement, and relied upon the rule established in one of the earlier cases, *Lindley v. Maggert*, 198 Mont. 197, 645 P.2d 430 (1982). In *Lindley*, there was a similar question of whether an easement had been conveyed to too many persons subsequent to its creation by reservation. Two of the defendants in the case argued that plaintiffs' use of the easement would "burden their land to a greater extent than contemplated when the easement was created." *Lindley*, 198 Mont. at 198, 645 P.2d at 431. The Court affirmed the district court's ruling that defendants had to allow access to the easement. The Court explained that "[t]he problem with defendants' argument is that the easement has thus far not been used and there is no evidence of an increased burden." The Court continued that it "cannot declare the proposed use will be inconsistent with the reserved easement on the

basis of speculation as to possible future uses." *Lindley*, 198 Mont. At 199, 645 P.2s at 432. *See also Titeca v. State*, 194 Mont. 209, 215, 634 P.2d 1156, 1160 (1981) ("This Court cannot declare the department's proposed use to be inconsistent with Titeca's easement on the basis of speculation."). The District Court found this analysis persuasive in the case at bar.

¶33 Steeds/Sanguines, relying on *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 916 P.2d 751 (1996), argue that the Court's ruling in *Leffingwell* that a planned subdivision creating 174 new easement holders was a use "not contemplated by the original parties to the easements, would be inconsistent with the historical use of the easements, and would constitute an improper burdening of those easements," is applicable to the case at bar. *Leffingwell*, 276 Mont. at 432-33, 916 P.2d at 758. They argue that, as in *Leffingwell*, the substantial increase in the number of easement holders was not contemplated by Klinke and is inconsistent with the historical use of the easement.

¶34 We disagree. First, we note that the *Leffingwell* Court did not address the speculative nature of the proposed easement usage; rather, it focused upon distinctly different factors such as disruption of an on-going business. Under the circumstances here presented, the District Court's reliance on *Lindley* and its refusal to extinguish legitimate easement rights based on speculation was not erroneous. In this context, it is also important to recognize that potential use of the Steeds' easement has not expanded as dramatically as portrayed by the Steeds. As indicated in the Table above, former defendants Price, Daniels, Murray, Dale, and Baker have either settled or defaulted. The record does not contain the terms of these settlement agreements but it appears these

parties relinquished their easement rights. As a result, the only remaining easement holders are the Solsos, Carters, Casazzas, Follensbees, Arbic, Younglove and Tisdells. Thus, here there are 7 easement holders where once there were 5, which is hardly akin to an increase of 174 easement holders, as occurred in *Leffingwell*. Moreover, future use of the easement will be largely dependent on the existence—or lack thereof—of a swimming or boat dock at the easement's shoreline location. Whether or not such a dock will be built was not a decision for the District Court to make; this decision will be made, if at all, by the appropriate county regulatory agency.

¶35 Turning to the Steeds'/Sanguines' statutory argument for extinguishment, § 70-17-111(1)(c), MCA, provides:

> Except as provided in subsection (2), a servitude is extinguished by the performance of any act upon either tenement by the owner of the servitude or with the owner's assent that is incompatible with its nature or exercise.

¶36 While the Steeds/Sanguines claimed that the easement holders "assented to the subdivision" of the property and that such assent was an act that was incompatible with the nature and exercise of the easement, the District Court observed that the easement holders merely purchased land in a subdivision that had easement rights appurtenant to it. The court concluded that the above-referenced statute did not authorize the extinguishment of the easement on such grounds. The court continued, however, that whether Casazza's activities were incompatible acts contemplated by the statute was a question of fact to be determined at trial, which is what eventually occurred.

¶37 We agree with the District Court's assessment that the easement holders—by purchasing lots in a subdivision—did not perform an act that is incompatible with the

13

nature of Steeds' easement. We also conclude that the Steeds/Sanguines have not demonstrated "performance of any act" by the easement holders that is incompatible with the nature of the easement.

¶38 The Steeds/Sanguines further assert the District Court was without jurisdiction to conclude that the easement holders were entitled to improve and maintain the easement, including the right to use an ATV and to remove rocks, vegetation and trees. Relying on *Old Fashioned Baptist Church v. Montana Dept. of Revenue*, 206 Mont. 451, 671 P.2d 625 (1983), they opine that based upon the content of the Second Amended Complaint "the scope of the easement or of what rights the easement holders have to maintain or improve the easement were not before the [c]ourt."

¶39 The Appellees counter that the Steeds/Sanguines clearly placed the scope of the easement before the District Court when they repeatedly argued that the easement holders should forfeit their rights based in part upon Casazza's use of his ATV on the easement property.

¶40 *Old Fashioned Baptist Church* is distinguishable from the case before us. In that case, which involved tax exemptions on various contiguous lots owned by the church, the district court removed tax exemptions granted by the Department of Revenue (DOR) on certain lots. The church appealed, arguing that the validity of 7 of these exemptions was not at issue in the case and the district court exceeded its jurisdiction in ruling on them. We agreed, noting that the original action was to quiet title on lots 6-9, but the court proceeded to act with respect to lots 10-16, over which no dispute was ever raised by

14

either party. We therefore concluded the court erred in expanding the nature of the action.

¶41 Conversely, the Steeds'/Sanguines' Second Amended Complaint included 4 counts—(1) a request for declaratory judgment, (2) an action to quiet title, (3) a request for injunctive relief, and (4) an action for trespass, remediation and damages (as to Casazza). Steeds/Sanguines asserted under Count Four as evidence of trespass and the need for remediation that Casazza cut trees, cleared brush, moved rocks, installed steps and drove his ATV up and down the easement. Additionally, in other pleadings Steeds/Sanguines referred to Casazza's easement-clearing activities as evidence of trespass, and the building of steps as further evidence of an "unreasonable burden" on the servient estate. As Casazza's maintenance and improvement activities on the easement were repeatedly raised and challenged throughout this case, we conclude the District Court appropriately took the opportunity to define the scope of the easement holders' rights in a manner that does not burden the servient estate but allows the easement holders' reasonable use of their rights to the property.

¶42 Finally, the Steeds/Sanguines also argue the District Court erred in finding that the easement holders' proposed dock would not unduly burden the Steeds'/Sanguines' properties. We agree with this argument. While the District Court was understandably reluctant to leave this issue for another day, the fact is that the issue of the type and size of the proposed dock is not ripe for determination. At present, it is unknown whether the prevailing Defendants will renew their application to construct a dock, whether the application will be granted, and if it is, what type and size of dock will be approved.

15

Therefore, we vacate as premature those findings of fact and conclusions of law of the District Court which resolve the question of whether the type of dock last proposed will unduly burden the Steeds'/Sanguines' properties.

¶43 The Steeds/Sanguines request that, in the event we extinguish the easements we order Casazza to remediate and restore the Steeds' and Sanguines' properties. Having affirmed the District Court's refusal to extinguish the easements, we need not address this issue.

## CONCLUSION

¶44 For the foregoing reasons, we affirm the District Court's rulings, with the exception that we vacate the court's findings of fact and conclusions of law related to the appropriateness of the proposed dock.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ JIM RICE